[No. 9042.  Department One.  March 4, 1911.]

FRANK M. WATSON, *Respondent*, v. EDWARD M. BAYLISS, *Appellant*.[1]

PRINCIPAL AND AGENT—FRAUD—ACCOUNTING BY AGENT.  Where an agent defrauds his principal by purchasing property and misrepresenting the price paid, the principal need not rescind the sale, but may recover money paid not used by the agent in the purchase.

SAME.  An agent employed to purchase property at the best price obtainable cannot deceive his principal and make a profit thereon by reason of the fact that he held an option on the property at the time of his employment.

Appeal from a judgment of the superior court for King county, Yakey, J., entered May 12, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for fraud.  Affirmed.

*Sanderson Reed* and *McClure & McClure*, for appellant.
*Holzheimer, Herald & Holzheimer*, for respondent.

FULLERTON, J.—The respondent brought this action against the appellant to recover money obtained from him through fraud and deceit.  In his complaint the respondent alleged that on or about May 24, 1909, he employed the defendant as his special agent to go from the city of Seattle, in the state of Washington, to the city of Portland, in the state of Oregon, and there negotiate with and purchase from the owner, for the lowest price for which the owner would

[1]Reported in 113 Pac. 770.

sell the same, certain personal property, being the machinery, fittings and furnishings of a certain show or exhibition, known as, "The Land of the Midnight Sun." That in accordance with such agreement, the appellant immediately went from the city of Seattle to the city of Portland, and as such special agent, negotiated with the owner for the purchase of the personal property mentioned, and while there communicated with the respondent and falsely, fraudulently and deceitfully informed him that the lowest price for which the owner would sell and transfer such personal property to the respondent was the sum of $2,750, and that upon the transmission of that sum to the appellant, he would purchase the personal property from the owners and forward it to the respondent. That thereupon he forwarded the sum requested to the appellant, who thereafter purchased the personal property from the owners, and in due course the same was forwarded to the respondent at Seattle. The respondent further alleged that the appellant negotiated with and purchased the property from its owners for the sum of $825, and no more, but wrongfully and fraudulently reported the purchase price to be $2,750 for the purpose of cheating and defrauding the respondent, and thereafter did appropriate to his own use of the moneys forwarded him by the respondent the sum of $1,925, to the respondent's damage in that sum. The answer was in effect a general denial of the allegations of the complaint.

On the trial the respondent's evidence tended to prove the allegations of his complaint. It developed, however, that the appellant, at some time prior to the date he accepted employment from the respondent, had entered into negotiations with the owners of the personal property for the purchase of the same, and had secured an option to purchase it, expiring January 1, 1909, for the sum of $825, payable $600 in cash and the release of a claim which the appellant had against the owners of the property for $225, and that the appellant on reaching Portland and securing the money from the re-

spondent had simply taken up his option by paying to the owners $600 in cash and releasing his claim. There is no direct evidence in the record tending to show the value of the property; that is, none of the witnesses attempted to place a value upon it as it was at the time it was received by the respondent. It was shown, however, that its owners readily sold it for $825, and that it cost the respondent some $1,500 to put in a workable condition.

The principal contention on the part of the appellant is that the respondent has mistaken his remedy. He argues that, conceding there was fraud practiced upon him by the appellant, he had, on its discovery, a choice of three remedies: (1) he could rescind the contract, return the property to the appellant and sue him for the purchase price paid; or (2) he could retain the property and if its value was less than the sum paid for it, recover the difference between its value and the price paid; or (3) he could recover the difference between the price paid the appellant for the property and the price paid by the appellant to the former owners, if the property was purchased by the appellant for himself after he became the respondent's agent for the purpose of purchasing it for the respondent. He argues, further, that the respondent is estopped to recover on the first ground stated, because he did not offer to return the property; that he cannot recover on the second ground because he failed to prove that the value of the property was less than the sum he paid for it; and that he cannot recover on the third ground because it was not shown that the appellant purchased the property after he became the agent of the respondent.

In answer to the objections it is not necessary that we notice the first two remedies suggested, as it is evident that the respondent has based his right of recovery on the last ground suggested. On this ground we think his right of recovery plain. The appellant was not the owner of the property at that time. True, he had an option entitling him to purchase

it, but this did not make him the owner. When, therefore, he undertook to procure it from its true owners for the respondent at the best price obtainable, he was bound to account to the respondent for any money he received from the respondent for the purchase of the property not used in making the purchase, whether he received it in good faith or with an intent to defraud. Nor does the fact that the respondent kept the property alter his right to recover. He may keep the property because it is his, because it was purchased for him and with his money. But the fact that he keeps it does not prevent him from exacting good faith on the part of his agent. *Hindle v. Holcomb*, 34 Wash. 336, 75 Pac. 873; *Jameson v. Kempton*, 52 Wash. 106, 100 Pac. 186.

The appellant cites and relies upon the cases of *Ely v. Hanford*, 65 Ill. 267, and *Kilbourn v. Sunderland*, 130 U. S. 505. The first of these cases, while conceding the right of a principal to recover the difference between the amount paid by his agent for a specific property and a greater sum he had obtained from his principal by falsely pretending that he had paid the greater sum, holds that the rule is different when the agent had contracted for the property in advance of his employment as agent. But it seems to us that this distinction is not sound. The agent should not be allowed to make a profit out of his bargain by deceiving his principal. This is contrary to the fundamental principles of agency, where the utmost good faith is required.

Nor is the remedy by rescission always available. The discovery of the fraud may not take place until after the purchaser has placed permanent and costly improvements on the property, the value of which cannot be accurately estimated, or after he has put it beyond his power to return it. And again, the amount the agent unlawfully exacts, when compared with the whole purchase price, is usually small, and the difficulty experienced in so framing a judgment that the principal may not lose the purchase price paid as well as the property he returns is so difficult as to make the

remedy of but little value. The safe rule is to hold the agent to a strict accountability, and compel him to return any sum he receives from his principal over and above the sum he actually pays for the property. The case from the supreme court of the United States is so different in its facts from the one at bar as to render it inapplicable as an authority. Moreover, we think these cases, if they do maintain the rule contended for by the appellant, are contrary to the rule heretofore announced by this court in the cases before cited. On the principle of *stare decisis*, therefore, we ought not to follow them.

The judgment is affirmed.

MOUNT, PARKER, and GOSE, JJ., concur.