[No. 15690.   Department Two.   March 23, 1920.]

WESTERN BAKERIES, INCORPORATED, *Respondent*, v.
JOHN DAVIS & COMPANY, *Appellant*.[1]

BROKERS—DAMAGES (74)—LIABILITY FOR NEGLIGENCE—MEASURE OF
DAMAGES. Where a broker negligently reported that a leasehold
could be sold for five hundred dollars upon a written option that
had expired, and plaintiff relied upon the assurance that a bonus
would be paid and thereupon moved out, and the prospective pur-
chaser refused to take the lease, and plaintiff was given the oppor-
tunity to move back, the measure of his damages is not the five hun-
dred dollars; since there was no enforcible contract therefor, but
only the cost of moving.

Appeal from a judgment of the superior court for
King county, Smith, J., entered November 7, 1919, upon
findings in favor of the plaintiff, in an action on con-
tract, tried to the court. Reversed.

*Carkeek, McDonald, Harris & Coryell,* for appellant.
*Leopold M. Stern,* for respondent.

TOLMAN, J.—Respondent, Western Bakeries, Incor-
porated, as plaintiff below, brought this action to re-
cover from appellant damages alleged to have been
suffered by reason of the failure on the part of appel-
lant to exercise due diligence in selling for it a lease-
hold interest or right of tenancy in a certain storeroom
in the city of Seattle. It appears that, in April, 1919,
respondent rented the storeroom in question from
month to month through appellant, who was the agent
of the owner, installed fixtures and opened up a retail
business therein. Finding the business unprofitable
it decided in June to discontinue, and sought to sell
its fixtures and tenancy. Accordingly it took the mat-
ter up with appellant, and at the suggestion of the

[1]Reported in 188 Pac. 406.

manager of appellant's rental department, wrote a letter dated July 1, 1919, to appellant, offering to dispose of its tenancy and fixtures at a price named, and to pay appellant ten per cent commission for making the sale. Appellant placed the matter in the hands of a Mr. Manard, one of its employees, who was unable to find a purchaser at the price fixed, but did obtain an offer of five hundred dollars as a bonus for the location, and took a deposit of $25 from the person making the offer, and issued him a receipt dated July 8, 1919, reciting that the offer should hold good for ten days, and if not accepted the money should be refunded. This offer was reported to respondent's treasurer, who had the matter in charge, and after discussing the matter with Manard, the latter was told to let the offer wait a few days in the hope that a. better offer might be secured. Thereafter, according to the testimony of the respondent's treasurer, the following occurred:

"On the Saturday of the next week, the 19th of July, about, I think just before twelve, I dropped in and talked with Mr. Manard, and he advised me to take the five hundred dollars. He said that the time limit of the offer that he had in hand then had expired, but the man had been in a couple of days before and had told him the offer was still on, that if we would take it today he would take the premises and pay the five hundred dollar bonus. I did not ask him who the man was nor how much deposit he had made, but he told me that it was absolutely safe for us to move out, that if we would move out on Monday, the 21st, he would pay us five hundred and one-third of the month's rent, the unexpired month, for which we had paid, and that we were perfectly safe in moving out, and in moving out he would close the matter up with us; that he didn't know whether he could do it that day or not, but he would do it Monday."

This witness further testified to the effect that it was then agreed that appellant's commission was to be re-

duced from the ten per cent to twenty-five dollars, and then, relying on the conversation quoted, respondent vacated the storeroom on the following Tuesday, thereafter tendered the keys to, and demanded the bonus from, the appellant; but in the absence of Mr. Manard, who, by reason of illness had not been at the office since the morning of Monday following the Saturday when the quoted conversation occurred, no one knew anything about the transaction, and he could get no satisfaction. But before the end of the month, he did learn that the sale had not been effected and was offered an opportunity to pay the next month's rent and continue the tenancy. The subsequent acts, and Mr. Manard's version of the conversation referred to are, as we view the case, immaterial, and need not be set forth.

The trial court made findings and entered judgment against the appellant for the amount of the bonus, plus one-third of a month's rent, less appellant's agreed commission, upon the theory that the appellant had contracted to pay to respondent the amount of the bonus and one-third of the month's rent in consideration of its vacating the premises, from which judgment this appeal is prosecuted.

If the pleadings be considered amended so as to conform to the proof, still we think the proof, accepting the respondent's version, fails to show any contract between the respondent and the appellant touching the matter. A brief consideration of the conversation upon which respondent relies at once reveals that respondent was then advised that the offer of the bonus had expired; that, if extended, the extension was oral only, and that the payment, if made, was to be made by the purchaser, and not by appellant, except as the purchaser might pay through it. But assuming that Manard, negligently and without exercising the

proper care to see that the purchaser would still pay the bonus, assured respondent that it was absolutely safe in moving out and would receive the bonus when it did so, and assuming that the respondent was justified in relying upon such assurances, and so relying did vacate the store, it does not follow that the liability of appellant is the amount the purchaser would have paid if he had performed according to Manard's assurances. On the contrary, the liability is to be measured by the loss occasioned to respondent by appellant's wrongful or negligent act. Appellant's negligence did not lose respondent a customer. The customer was lost by the expiration of the time on which his offer was conditioned, or if, in fact, the customer was lost by reason of appellant's negligence, the thing to be sold still belonged to respondent and might have been retained and enjoyed by it, or sold to another at an equal or greater price, for all the record shows. Appellant's negligent and wrongful act caused respondent to vacate the storeroom, and upon learning the truth, it might, if it had so desired, have moved back and re-possessed it, and in that event would have suffered loss only from the interruption of its business, if any, and the cost of moving its effects out and moving them back again; or at the most, these items plus the difference between the bonus offered and such a bonus as might thereafter have been obtained.

"An agent is liable on the ground of negligence only for such damages as are the natural and proximate result of his negligence, and the measure of damages is the loss or injury actually sustained by the principal as the result of such negligence, and no further damages can be recovered." 2 Corpus Juris, 734, and cases there cited.

The respondent introduced no evidence of any loss or damage sustained by it as a result of appellant's

negligence, and the judgment appealed from is therefore reversed, with directions to dismiss the action.

HOLCOMB, C. J., FULLERTON, BRIDGES, and MOUNT, JJ., concur.