[No. 20372. Department Two. April 18, 1927.]

A. M. BREEDLOVE, *Respondent*, v. J. V. HOLTON, *Appellant*.[1]

[1] PRINCIPAL AND AGENT (15, 17)—INDIVIDUAL INTEREST OF AGENT— FRAUD AS AGAINST PRINCIPAL. Where an agent represents to his principal that he is selling his property for $7,000, but takes the contract in his own name and resells for $8,000, taking care to keep the parties from communicating with each other, the courts will, on suit of the principal, cancel the agent's contract so as to give the principal the benefit of the full sales price.

[2] SAME (59)—RATIFICATION OF AGENT'S ACT—KNOWLEDGE OF FACTS. In such a case, the acceptance by the principal of installment payments is not a ratification of the transaction, where such acceptance was made during negotiations for a settlement of the dispute, promptly followed by an action.

Appeal from a judgment of the superior court for San Juan county, Brown, J., entered January 27, 1926, upon findings in favor of the plaintiff, in an action to cancel a contract for the sale of land and quieting title thereto. Affirmed.

[1]Reported in 255 Pac. 132.

*David R. Mitchell,* for appellants.

*S. R. Buck* and *J. L. Corrigan,* for respondents.

PARKER, J.—The plaintiff Breedlove commenced this action in the superior court for San Juan county seeking a decree canceling a contract for the sale of his land in that county to the defendant, Holton, and also subrogating him to the rights of Holton in a contract entered into on the day following by Holton for the sale of the same land to the defendant Buchanan. The cause, being of equitable cognizance, proceeded to trial before the court sitting without a jury, resulting in a decree awarding to Breedlove relief as prayed for, from which the defendant Holton has appealed to this court.

Holton is an experienced real estate dealer. Breedlove, at all times in question, has been aged and infirm, and was led to believe Holton to be his personal friend who was interested in aiding him to sell his land to relieve his pressing financial needs. Buchanan, at the times in question, lived in San Juan county, while Breedlove lived in Seattle. About April 25, 1924, Holton sought and obtained from Breedlove the agency for the sale of the land, Breedlove fixing the sale price at $8,500. Soon thereafter he induced Buchanan to tentatively agree to contract for the purchase of the land for $8,000. Soon thereafter Holton represented to Breedlove that Buchanan would contract to buy the land for $7,000, payable in installments, and that that was the best that could be done looking to a sale of the land. Thereupon Breedlove agreed to make such a sale contract. Accordingly Holton drew up and presented to Breedlove, for execution, a contract for a sale of the land to himself, specifying the purchase price as $7,000, payable in quarterly installments of one hundred fifty dollars each, commencing June 15, 1924, with six per

cent interest on deferred payments. That contract was executed by Breedlove and Holton on May 6, 1924.

Breedlove does not seem to have given any concern as to who should be named in the contract as the purchaser, though it seems plain that he was informed by Holton that Buchanan was to ultimately become the purchaser, apparently Breedlove believing that the insertion of Holton's name in the contract as purchaser was merely for the purpose of enabling Holton to finally effect the sale and collection of the installments for him, as was contemplated by them. On the following day, May 7, 1924, Holton entered into a contract for the sale of the land to Buchanan at an agreed purchase price of $8,000, payable in quarterly installments of one hundred seventy-five dollars each, commencing on June 1, 1924, with six per cent interest on the deferred payments as had been previously tentatively agreed between them. Buchanan has made the one hundred seventy-five dollars quarterly installment payments to Holton according to that contract and Holton has in turn made the one hundred fifty dollars quarterly installment payments to Breedlove falling due fifteen days later according to his contract with Breedlove.

Holton was careful to conduct the deal so that Buchanan and Breedlove would not come personally together or have any personal communication with each other, either in the making of the sale contracts or collecting of the installments, though each was informed of the other's interest in the deal except as to the agreed purchase price. Indeed, it is fairly certain that Holton stated to each of them that there was no need of his communication with the other.

In March, 1925, Breedlove met Buchanan while on a visit to San Juan county, and in a conversation with him discovered that Holton had contracted with

Buchanan for the sale of the land at the agreed price of $8,000, payable in quarterly installments of one hundred seventy-five dollars each. This was followed by negotiations between Holton and Breedlove looking to a settlement of Breedlove's demand upon Holton that he have the benefit of the $8,000 purchase price to be paid by Buchanan for the land. These negotiations proving unsuccessful, this action was commenced in October, 1925, resulting in the decree being rendered in January, 1926, from which this appeal is prosecuted.

While Buchanan answered as a defendant in the case, he has remained neutral in the controversy between Breedlove and Holton, claiming only that his purchase contract rights be preserved, being willing to pay the quarterly installment upon the $8,000 purchase price as agreed by him, to the one entitled thereto, and ultimately receive good conveyance of the land. This summary of the facts, we think, is as favorable to the contentions of Holton here made as the record will warrant.

[1] Contention is made in behalf of Holton that there was no agency relation existing between him and Breedlove from and after the date of their sale contract of May 6, 1924. As to this, we think, the evidence clearly preponderates in support of the conclusion of the trial court, in effect, that the agency not only existed before, but after, the making of that contract; and that thereafter, as well as before, Holton was bound to the utmost good faith in securing for the benefit of Breedlove the full purchase price of $8,000 which was contracted for by Holton with Buchanan. Such being their continued relation, the applicable law is well settled. In 21 R. C. L. 829-830, it is well stated as follows:

"The doctrine is familiar that an agent cannot, either directly or indirectly, have an interest in the sale of the property of his principal which is within the scope

of his agency, without the consent of his principal, freely given, after full knowledge of every matter known to the agent which might affect the principal. If employed to sell, the agent may not become the purchaser; and if employed to buy, he may not be the seller. An agent may undoubtedly buy of his principal, or have an interest in the sale of property belonging to his principal; but in such case the burden is upon the agent to show that the principal had knowledge, not only of the fact that the agent was buying or interested, but also of every material fact known to the agent which might affect the principal, and that, having such knowledge, he freely consented to the transaction.''

And in 2 C. J. 708, we also read:

''An agent can purchase property from his principal only where he acts in good faith and makes a full disclosure of all facts within his knowledge affecting the value of the property. If he does not make such disclosure or act in good faith, the principal may have the sale set aside.''

Our own decisions in *Watson v. Bayliss*, 62 Wash. 329, 113 Pac. 770, 34 L. R. A. (N. S.) 1210, and *Stewart v. Preston*, 77 Wash. 559, 137 Pac. 993, are in harmony with this view of the law.

[2] Contention is further made in behalf of Holton that there has been a ratification of the sale contract made between him and Breedlove on May 6, 1924, by Breedlove's acceptance of the installment payments as therein agreed. Such payments, accepted up until March, 1925, were wholly in the absence of any knowledge on the part of Breedlove of the violation by Holton of his agency agreement and obligation which, of course, was that he should obtain the best price obtainable for the land. Breedlove's discovery of Hilton's violation of his agency duty in March, 1925, was followed by negotiations looking to the satisfying of Breedlove's demand that he receive the full benefit of the $8,000 purchase price contract entered into by Holton with Buchanan.

It was not long after the failure of such negotiations that this action was commenced. It is also plain that Holton has not been in the least prejudiced by any delay in the commencement of this action. Breedlove's acceptance of one or two payments after March, 1925, before the commencement of this action, we think, was not under such circumstance as to recognize his sale contract with Holton as binding. Under the circumstances shown, we are convinced that there was no such acts or delay on the part of Breedlove as precludes him from successfully denying ratification of the $7,000 purchase price contract.

Plainly, we think the judgment must be affirmed. It is so ordered.

MACKINTOSH, C. J., TOLMAN, and ASKREN, JJ., concur.