[No. 42674.   En Banc.   August 16, 1973.]

INVESTMENT EXCHANGE REALTY, INC., *Respondent*, v. HILLCREST BOWL, INC., *et al.*, *Petitioners*.

*Casey & Pruzan*, by *Carl Pruzan*, for petitioners.

*John C. O'Rourke*, for respondent.

WRIGHT, J.—This is an action by a real estate broker to recover a commission for negotiation of a lease. The question presented is whether a broker has a duty to expressly disclose a dual agency in which the broker represented both the lessor and the lessee.

The facts are not disputed although there is a very real dispute as to the interpretation to be placed on the facts.

Hillcrest Bowl, Inc. (appellant) is the owner of a shopping center in Renton. The Ralston Purina Company, a Missouri corporation (hereafter Ralston), is a large concern with numerous business operations. One of the Ralston enterprises is known as "Jack in the Box" restaurants. Investment Exchange Realty, Inc. (respondent) is engaged in the real estate business.

Approximately the first of June, 1969, negotiations started on the matter involved here. Initially two salesmen for respondent approached Mr. Alec Bakamus, secretary-treasurer of appellant, with a proposal for a sale to Ralston of a substantial part of the appellant's property. Mr. Bakamus did not want to sell any part of the property, and rejected the offer. After that, there were several offers to purchase property, all of which were rejected. In all the offers, Ralston was the proposed buyer.

Next came discussions of a lease. During the process of negotiating a lease there were many contacts between the parties. There is no question appellant knew Ralston was the party seeking to buy the property and later seeking to lease the property. It was, however, denied by appellant and by its secretary-treasurer, Alec Bakamus, that appellant or Bakamus ever knew respondent was the agent of Ralston.

The major subject for negotiation was the recovery of the deposit or advance payment of rent. Testimony indicated that Ralston did not normally pay a deposit, but would do so in some instances. Here the deposit agreed upon was $5,500.

Ralston did not wish to make any deposit. Appellant however, insisted on a deposit and Ralston suggested it apply to prepayment of the first 10 months' rent. Appellant desired to have the deposit applied as prepayment of the last 10 months of the first 10 years of the lease term. Mr. John Castiglione, the managing general partner in the Seattle area for Jack in the Box restaurants, signed a letter of intent to lease which provided for applying the deposit to prepayment of the last 10 months of the first 5 years of the

term. The lease as finally executed provided for the deposit to be recovered by being applied to prepayment of the rent for the third month, the sixth month and each 3 months thereafter until fully recovered.

The matter of when the deposit was to be applied as prepaid rent was of vital importance to appellant because it needed an uninterrupted cash flow. When the letter of intent was tendered to appellant calling for application of the deposit to the rent for the last 10 months of the first 5 years, the agents for respondent stated they could induce Ralston to change the terms to the last 10 months of the first 10 years. The said agents in fact knew Ralston often would finally agree to terms substantially less favorable to the lessor than those proposed in the letter of intent, which fact was not disclosed to appellant. The result of all of the negotiations was a lease substantially less favorable to appellant than the lease initially discussed.

The finding of the trial court that is in question here is finding of fact No. 8, which reads as follows:

Thereafter, defendant refused to pay commission to plaintiff, on the ground that it had learned that at the same time that plaintiff was agent of defendant, it was also agent of Ralston Purina Company. The court finds that the plaintiff was at all times acting as agent of Ralston Purina Company, *but further finds that the defendant knew or should have known of that fact, because of the following events*: Prior to the lease negotiations above set forth, plaintiff had presented to defendant three different earnest money agreements on standard forms of earnest money agreement, in each of which Ralston Purina Company was the buyer, plaintiff was the broker, and defendant was to pay the commission. None of these were accepted by defendant, because it did not want to sell a part of its shopping center. *It should have been apparent to defendant at that point that plaintiff was acting on behalf of Ralston Purina Company in seeking locations for the latter's "Jack in the Box" restaurants.*

(Italics were taken from the appellant's assignment of

error wherein error was assigned only to that portion of the finding.)

■ We said in *Sylvester v. Imhoff*, 81 Wn.2d 637, 639, 503 P.2d 734 (1972):

> We are firmly committed to the rule that the findings of fact of the trial court will not be disturbed on appeal if evidence is present in the record to support the findings.

■■ The crucial question is whether a broker has a duty to expressly disclose a dual agency relationship. We hold there is such a duty.

It was said in *Brandt v. Koepnick*, 2 Wn. App. 671, 674, 469 P.2d 189 (1970) that a "dual agency relationship, while extremely delicate, is permissible when both parties have full knowledge of the facts and consent thereto." In this instance there is no showing the parties consented thereto. Further, the above-quoted finding of fact No. 8 did not say appellant knew of the dual agency, only that he "knew or should have known." The test stated in *Brandt* is not met herein. That test can only be met by a clear and express disclosure of the dual agency relationship with consent thereto by both principals.

We have often held a real estate broker owes to his client the duty to exercise the utmost good faith. *Frisell v. Newman*, 71 Wn.2d 520, 429 P.2d 864 (1967); *Mersky v. Multiple Listing Bureau*, 73 Wn.2d 225, 437 P.2d 897 (1968).

We said in *Moon v. Phipps*, 67 Wn.2d 948, 954, 411 P.2d 157 (1966):

> Loyalty is the chief virtue required of an agent. Failure to make a full disclosure of all facts within the agent's knowledge having to do with the transactions will warrant the court's setting the transaction aside at the behest of the principal. *Breedlove v. Holton*, 143 Wash. 347, 255 Pac. 132 (1927); *Stewart v. Preston*, 77 Wash. 559, 137 Pac. 993 (1914); *Watson v. Bayliss*, 62 Wash. 329, 113 Pac. 770, 34 L.R.A. (n.s.) 1210 (1911). This loyalty demanded of an agent by the law creates a duty in the agent to deal with his principal's property solely for his principal's benefit in all matters connected with the agency. Restatement (Second), Agency § 387 (1958).

A case particularly in point is *Ramsey v. Sedlar,* 75 Wn.2d 901, 908, 454 P.2d 416 (1969) in which the matter of a brokerage commission was in controversy. Therein it was specifically held that if brokers "unilaterally undertook to promote a significant interest of the prospective purchasers of appellants' property they breached their duty of loyalty to an extent warranting a forfeiture of their commission."

Because of respondent's failure to expressly disclose the dual agency relationship and obtain appellant's consent thereto, the judgments of the trial court and of the court of appeals must be and are hereby reversed.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied October 18, 1973.