[No. 43629. En Banc. October 16, 1975.]

RALPH G. MONTY et al, *Respondents*, v. WARD W. PETERSON et al, *Defendants*, LEWIS W. SHURTLEFF et al, *Petitioners*.

*Charles E. Hunter*, for petitioners.

*Sam B. Franklin* (of *Lund, Franklin & DeLong*), for respondents.

UTTER, J.—This is an appeal from a judgment entered in a nonjury trial in favor of the plaintiffs (respondents), Ralph and Karin Monty, in a suit for the amount of a real estate broker's commission paid by them to defendants (petitioners) Lewis W. Shurtleff and Shurtleff, Inc. The trial court found for the Montys, who claimed that the defendants had negligently failed to inform them of restrictive covenants materially affecting the value of a parcel of land they received in a real estate transaction in which they employed the defendants. It held that defendants' nondisclosure rendered them liable for the full amount of the

commission they received, regardless of the actual damages respondents incurred.

The Court of Appeals did not reach the merits of petitioners' argument due to the improper form of their brief. Review was granted by this court, however, to reach the issue of the proper amount of damages for negligent nondisclosure by a real estate broker. We reverse the judgment of the trial court and hold that, where a broker acts in good faith but negligently fails to disclose to his client a fact material to the transaction and no question of divided loyalty is involved, the proper measure of damages is the actual harm caused to the client by the broker's negligent omission.

The series of transactions that gave rise to this lawsuit began when respondents retained petitioners as their agent in listing an apartment house they owned for sale. Shortly after he had been retained by respondents, petitioner Shurtleff was retained by another couple, Ward and Viola Peterson, who wished to sell a small parcel of property (called the "Monson lot") and invest in some more extensive real estate. Mr. Shurtleff informed the Petersons of the availability of the respondents' property and obtained from them an earnest money offer to purchase it which he presented to respondents. After lengthy negotiations, they accepted it. The purchase price of the respondents' property was $55,000, $5,650 of which was paid by transferring the Monson lot to them.[1]

[1]Respondents argue in their brief that, since there is nothing in the record indicating that petitioners disclosed the fact of this dual agency to them, the trial court's award to them of the broker's commission should be upheld under *Investment Exch. Realty, Inc. v. Hillcrest Bowl, Inc.*, 82 Wn.2d 714, 513 P.2d 282 (1973). It is true that the *Investment Exchange* case does put the burden on the broker to show that the fact of any dual agency relationship was disclosed to his or her clients, but that burden can be imposed only where nondisclosure of a dual agency is made a basis for an aggrieved client's suit for damages. Here respondents' complaint did not clearly allege any wrongful nondisclosure of the dual agency, and the issue was not explored by either side at trial. At oral argument in this court, petitioners' counsel stated that both respondents and the Petersons were well aware of petitioners'

The Monson lot was zoned for duplex construction, and at all times all the parties were aware that this fact was material to respondents' valuation of it. It was also, however, subject to private covenants that restricted its use to single-family dwellings. Neither petitioners nor respondents were aware of these restrictions until they received the preliminary title report on the property. At that time petitioner Shurtleff mentioned the restrictions to respondents, but did so in a manner that (according to the findings of the trial court) did not adequately call to their attention the effect the covenants might have on their valuation of or plans for the property.

When, after the transactions were completed, the respondents became aware of the covenants and their import, they discussed the matter with petitioner and obtained a $680 rebate from the Petersons. They apparently were not satisfied with this partial settlement, and although the covenants diminished the value of the lot to them by only $850 and they had received $680, they filed this action against petitioners for the full amount of the broker's commission they had paid them, $3,300. The trial court awarded them this full amount, holding that under *Mersky v. Multiple Listing Bureau of Olympia, Inc.*, 73 Wn.2d 225, 437 P.2d 897 (1968), the measure of damages for negligent nondisclosure by a broker is the full amount of his or her commission, regardless of good faith and the fact that the damage caused by the nondisclosure was considerably less than that amount.

Petitioners' liability for failing to adequately advise their clients of the significance of the covenants on the land they purchased is not in issue here. Agents have a duty to exercise care in dealing with their principals and are liable for any damage caused by a breach of that duty. Restatement (Second) of Agency § 379 (1958); *see Merkley v. MacPherson's, Inc.*, 69 Wn.2d 776, 420 P.2d 205 (1966); *Ferris &*

dual employment, and respondents' counsel did not dispute this contention. We thus do not believe that petitioners' duty under *Investment Exchange* is properly at issue in this case.

*Hardgrove v. Buff*, 20 Wn.2d 161, 146 P.2d 331 (1944). The only question before us is what the measure of damages for breach of that duty should be in the circumstances of the instant case.

█ In most situations, an agent's negligence renders him or her liable only for the actual damages it causes the principal. *Merkley v. MacPherson's, Inc., supra* at 780; *Western Bakeries, Inc. v. John Davis & Co.*, 110 Wash. 463, 188 P. 406 (1920); *Green v. Bouton*, 101 Wash. 454, 172 P. 576 (1918). In *Mersky v. Multiple Listing Bureau of Olympia, Inc., supra*, however, we recognized a limited exception to this rule in cases where agents negligently or intentionally fail to disclose to their principals facts bearing on their interests in the matters in which they are employed and their ability to maintain undivided loyalty to the principal. We held in *Mersky*, at page 233, that nondisclosure of a familial relationship between an agent and the person with whom he was dealing on the principal's behalf rendered him liable for the full amount of the commission he received "[h]owever inadvertently this failure [to disclose] occurred."

*Mersky* was viewed as controlling by the trial court on the question of measure of damages in any case of nondisclosure by an agent, and its rule was applied to the facts here even though there was no potential conflict of interest by the agent involved. In so doing, the court misinterpreted *Mersky's* holding. There we heavily emphasized that what was involved was nondisclosure of a fact that impugned the agent's ability to exercise undivided loyalty in representing his principal's interests.

It is of no consequence, in this regard, that the broker may be able to show that the breach of his duty of full disclosure and undivided loyalty did not involve intentional or deliberate fraud, or did not result in injury to the principal, or did not materially affect the principal's ultimate decision in the transaction. The rule and the available remedies, instead, are designed as much to prevent fraud as to redress it, and follow directly upon the heels of the broker's deliberate or innocent failure to

timely and fully disclose to his principal the fact of the interdicted relationship, for the reason that the very existence of the relationship may have corroded the broker's obligation of undivided loyalty, may have been a material circumstance to the principal, or may have affected his actions or decisions in the course of the transaction involved.

*Mersky v. Multiple Listing Bureau of Olympia, Inc., supra* at 231. The nondisclosure there violated two duties the agent owed to his principal: the duty to exercise care and the duty of loyalty and corollary responsibility to disclose any facts which might bear on his ability to keep that loyalty undivided. Here no question of loyalty was involved. The trial court held specifically that petitioners acted in good faith, but did not adequately emphasize the significance of the restrictive covenants to respondents. In such circumstances the special rules of *Mersky* are not applicable.

In *Tackett v. Croonquist*, 244 Cal. App. 2d 572, 53 Cal. Rptr. 388 (4th Dist. 1966), the court specifically held that damages for negligent nondisclosure were limited to the actual harm caused to the principal where no question of the undivided loyalty was involved. Although apparently no other courts have directly addressed the issue, the rule of *Tackett* has been assumed by the court and parties to fix the proper measure of damages in a number of similar nondisclosure cases. *See, e.g., James Wood Gen. Trading Establishment v. Coe*, 191 F. Supp. 330 (S.D.N.Y. 1961); *Witt v. John Blomquist, Inc.*, 249 Minn. 32, 81 N.W.2d 265, 59 A.L.R.2d 1451 (1957). We find it consistent with our previous cases involving negligence by agents in other aspects of their employment. We see no reason to expand the rule of *Mersky* to cases where the only duty breached is nondisclosure of a material fact. Failure to convey information, where that information is not pertinent to the agent's loyalty to his or her principal, is simply one specie of negligence, the penalty for which should be no greater than

that for any other form of unintentional misfeasance by an agent.

We therefore hold that petitioners were liable only for the actual damages caused by their negligent failure to inform respondents of the covenants and their significance. It appears to be undisputed that, after they received the $680 settlement from the Petersons, respondents' net loss due to their ignorance of the covenants was $170. The award in their favor should have been limited to that amount, and the judgment in favor of respondents for the full amount of the broker's commission paid petitioners was therefore excessive.

The decision of the trial court is reversed.

STAFFORD, C.J., FINLEY, HUNTER, HAMILTON, and BRACHTENBACH, JJ., and COCHRAN, J. Pro Tem., concur.

WRIGHT, J. (dissenting)—I dissent. The majority opinion is not only contrary to the established law of this state, but also it relaxes the high standards we have established for the conduct of real estate brokers.

The trial court and the Court of Appeals reached the right result and I would affirm.

The Court of Appeals was right in saying the first assignment of error was inadequate and the matter was never properly presented on appeal. The first assignment of error read:

> The trial court erred in granting judgment to respondents Monty against the appellants, Lewis W. Shurtleff, et ux, and Shurtleff, Inc., a Washington Corporation, in the amount of the commission earned for the sale of respondents' apartment house.

Such a purported assignment of error does not in truth point out any alleged error, it is merely an assertion that the appellant is unhappy with the decision of the trial court. As the Court of Appeals correctly said, "Such a general assignment is but an invitation to search the record for specific errors on which the general assignment rests." *Storms v. Vincent*, 57 Wn.2d 907, 358 P.2d 135 (1961). In

*Koster v. Wingard,* 50 Wn.2d 855, 856, 314 P.2d 928 (1957), we said, "[W]e consider only errors specifically pointed out."

There were only two assignments of error.

The second assignment of error was:

The trial court erred in failing to hold that the appellants were released from any further obligation to respondent pursuant to an agreement entered into evidence as Exhibit 5.

The Court of Appeals states this contention was made for the first time on appeal and, for that reason, declined to consider it. This matter was not mentioned at all in the petition for review and, hence, will be deemed abandoned and not discussed further.

The truly significant question herein relates to the right of a real estate broker to receive and retain a commission in a transaction wherein he has failed to disclose to his principal a material fact known to the broker. Without in any way receding from that position that the question is not properly before the court because of the grossly deficient assignment of error, as hereinbefore mentioned, I shall discuss that matter.

*Investment Exch. Realty, Inc. v. Hillcrest Bowl, Inc.,* 82 Wn.2d 714, 717, 513 P.2d 282 (1973), is a recent case that states the rule as to the duty of a real estate broker to be loyal to his principal. Therein we said:

We have often held a real estate broker owes to his client the duty to exercise the utmost good faith. *Frisell v. Newman,* 71 Wn.2d 520, 429 P.2d 864 (1967); *Mersky v. Multiple Listing Bureau,* 73 Wn.2d 225, 437 P.2d 897 (1968).

We said in *Moon v. Phipps,* 67 Wn.2d 948, 954, 411 P.2d 157 (1966):

Loyalty is the chief virtue required of an agent. Failure to make a full disclosure of all facts within the agent's knowledge having to do with the transactions will warrant the court's setting the transaction aside at the behest of the principal. *Breedlove v. Holton,* 143 Wash. 347, 255 Pac. 132 (1927); *Stewart v. Preston,* 77 Wash. 559, 137 Pac. 993 (1914); *Watson v. Bayliss,* 62

Wash. 329; 113 Pac. 770, 34 L.R.A. (n.s.) 1210 (1911). This loyalty demanded of an agent by the law creates a duty in the agent to deal with his principal's property solely for his principal's benefit in all matters connected with the agency. Restatement (Second), Agency § 387 (1958).

When compared to other cases in which a real estate commission has been forfeited, the misconduct of Shurtleff herein is far more serious than was the misconduct in many of the other cases. For example, in *Frisell v. Newman*, 71 Wn.2d 520, 429 P.2d 864 (1967), the only thing improper was the failure to inform the principal (seller) of buyer's membership in a multiple-listing bureau which entitled buyer to share in the commission. In *Mersky v. Multiple Listing Bureau of Olympia, Inc.*, 73 Wn.2d 225, 437 P.2d 897 (1968), the only improper act was failure to inform the seller that the buyer had a relative employed in the office of the real estate broker. In each of those cases the terms of sale and the price was exactly what the seller had agreed to.

Compare the present case. The broker had informed the buyer that the property was zoned to permit construction of multiple-family residences. That statement, while literally true, was misleading in the extreme because of a restriction in the deed which limited the property to single-family dwellings. The broker knew of the restriction late in February or early in March 1971, when he received a preliminary title report.

The broker knew the purchaser, his principal, wanted to acquire the property for the one and only purpose of building a multiple-family dwelling. From late February or early March 1971 to the date of closing, April 9, 1971 (approximately a month), the broker maintained a stony silence. At closing, when he finally mentioned the restriction, he was vague and evasive.

It should be specifically noted that plaintiff Ralph G. Monty testified he knew nothing of the restrictive covenant

until about 2 months after closing when he received a title insurance policy in the mail.

Taking, however, the testimony of Shurtleff we find, as did the trial court, a wholly inadequate disclosure even on the day of closing. His own testimony was:

> I mentioned to him at the time we have a preliminary report with me and we went over it briefly. I said, "It looks like it is single family; however, I don't think the value is any different," and he was anxious to sell the apartment, and he says, "Well, do you think it is worth it", and he said "Okay, let's go ahead with the thing and get it closed."

By the admission of the broker, that was the only discussion and no copy of the preliminary report was given to Mr. Monty until after closing. Shurtleff further testified, "I don't think we ever discussed the lot at any length."

At another point the broker testified:

> Q. Now, you told Mr. Monty on that occasion in your opinion this was no different in valuation because of this restriction, didn't you? A. Well, I indicated to him that in most lots that was no problem, and this wasn't really an issue because there was concern on his part for getting the thing closed and also building the house, and these things were still there to be done and so this part of it became secondary to accomplishing the other objectives.

How does this compare with our rule "loyalty is the chief virtue required of an agent?" The broker knew the house his principal intended to build was a duplex. The broker knew it could not be built. The broker knew this was part of the transaction for the sale of an apartment house at a price of $55,000 for which the broker was originally to receive a 10 percent commission, although for reasons not herein material that commission was later cut to 6 percent. The broker thus had strong reasons to want the apartment house sale to be completed and strong reasons to avoid anything that might delay or prevent that sale.

The grantee in the lot transfer was the seller of the apartment house and was thus the broker's principal, the one to whom the broker owed undivided loyalty.

The majority places reliance upon the trial court's finding that the broker acted in good faith. The rule in this state is that subjective good faith is not enough. It was said in *Mersky v. Multiple Listing Bureau of Olympia, Inc., supra* at 231, in part:

It is of no consequence, in this regard, that the broker may be able to show that the breach of his duty of full disclosure and undivided loyalty did not involve intentional or deliberate fraud, or did not result in injury to the principal, or did not materially affect the principal's ultimate decision in the transaction.

For the reasons stated, I would affirm.

ROSELLINI, J., concurs with WRIGHT, J.