Norman J. VEACH, Appellant,

v.

MEYERES REAL ESTATE, INC., Appellee.

No. 4189.

Supreme Court of Alaska.

Sept. 14, 1979.

Barry Donnellan, Anchorage, for appellant.

Peter J. Aschenbrenner, Aschenbrenner & Savell, Fairbanks, for appellee.

Before RABINOWTIZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BOOCHEVER, Justice.

This is an action brought by Meyeres Real Estate, Inc. ("Meyeres"), a Fairbanks firm, against Norman J. Veach, for payment of commission on the sale of a property in Fairbanks which Veach listed exclusively with Meyeres. Veach claimed that Meyeres violated its fiduciary duty to him, and hence forfeited its right to a commission. The superior court, sitting without a jury, did not agree, and entered judgment for Meyeres for $4,220.00, the amount of the claimed commission, plus interest and costs. Veach has appealed.

On December 11, 1976, Veach entered into an exclusive listing agreement with Meyeres. Rod Wakefield, a Meyeres agent, took the listing. The listing agreement provided for Meyeres' compensation as follows:

> I agree to pay to Meyeres Real Estate, Inc. (10%) ten percent in cash at close of sale of the selling price as described in Paragraph 3 above if, during the listing period or renewal thereof anyone including myself, produces a purchaser ready, willing, and able to purchase the property herein in accordance with the price and terms specified above or in conformance with modifications subsequently agreed to by me in writing. If the property

herein is withdrawn from sale or made unmarketable by my voluntary act during the listing term or renewal thereof, I agree to pay Agent the same percent of the listing price as above noted.

The listing, which expired on December 25, specified Veach's desire to reserve an access easement along one boundary of the property.

On December 15, 1976, "Mick" Killion, another broker working for Meyeres, submitted an offer and earnest money on his own behalf. Killion's offer, however, was not consistent with Veach's listing, and Veach therefore rejected it. On December 17, Killion submitted a second offer. This offer, which expired on December 18, was also rejected by Veach primarily because it did not specify reservation of an easement.

Meanwhile, on December 16, Veach was contacted by Jerry Flodin, an old friend, who had long been interested in the Veach property. According to Veach, he showed Flodin the newspaper ad about his property that had been placed by Meyeres, and encouraged him to go see Meyeres. On December 17, Veach, accompanied by Flodin, visited Veach's attorney, Clem Stephenson, to discuss Veach's obligation, if any, to accept Killion's easement-less offer.

Sometime shortly after Killion's first offer, Wakefield received an inquiry on the Veach property from Rod Konetski. Wakefield at first refused to write up Konetski's offer, as he believed that Killion and Veach had reached an agreement.[1] He subsequently accepted Konetski's offer and earnest money[2] on December 23, but in writing up the offer neglected to include Konetski's willingness to accept Veach's easement. That same day, Wakefield telephoned Veach at home to inform him of the offer. Veach was not there, so Wakefield left a message with Veach's wife. On De-cember 27, Veach came to the Meyeres office; Wakefield gave Veach a copy of Konetski's offer. Later that day, Wakefield received a telephone call from Veach's attorney, Stephenson, concerning Veach's obligation to accept earnest money agreements after the listing period expired. On December 30, Wakefield, with Konetski in his office, telephoned Stephenson and learned that Veach was selling the property himself.

The parties are in dispute as to the date that Veach and Flodin actually agreed to the sale. Veach claims that he had no agreement before December 30. Flodin, on the other hand, insists that the agreement was reached before that date, and that he and Veach told Stephenson at Stephenson's office to draw up the necessary papers, which were subsequently signed there on the 30th. He could not recall a specific date for this agreement. Veach, however, testified that he met Flodin only three times in December: the 16th, 17th and 30th.

The trial court ruled that Meyeres did not earn its commission through either the Killion or the Konetski offer, since neither offer, as reported to Veach, met the terms of the listing agreement with respect to the easement. But it also held that Wakefield did not act in bad faith in regard to the Konetski offer, although he committed an important oversight in not reducing to writing Konetski's offer to grant an easement. Because Flodin and Veach negotiated for the sale of the listed property during the period of the exclusive listing agreement, the court concluded that Meyeres was entitled to ten percent of the listed price.

We agree with Veach that, negligent or otherwise, a broker's failure to communicate information which might influence the conduct of his principal is a breach

---

1. Veach argues that Wakefield's refusal to accept Konetski's offer established Wakefield's bad faith in promoting the interests of his fellow agent, Killion, over the interests of his principal, Veach. The trial court, however, concluded that Wakefield was not acting in bad faith, but delayed writing up the earnest money agreement because he reasonably believed Veach had accepted the Killion offer. Since Veach did not formally challenge this finding on appeal, we are bound by it. At any rate, the finding does appear to be supported by competent evidence.

2. Konetski's offer was several thousand dollars higher than Veach's listed price.

of the fiduciary relationship owed to the principal.[3] But not every breach of a broker's duty forfeits his or her right to the agreed fee. The few cases we have found involving negligence without bad faith generally hold that the broker, while liable for whatever damages the negligent conduct has caused, does not also automatically lose his or her commission. *See, e. g., Tackett v. Croonquist*, 244 Cal.App.2d 572, 53 Cal.Rptr. 388, 392 (1966); *Monty v. Peterson*, 85 Wash.2d 956, 540 P.2d 1377, 1378 (1975).[4] We agree with this holding. A principal purpose of an automatic forfeiture rule is to deter intentional misconduct by brokers. *Greenberg v. Meyer*, 50 Ohio App.2d 381, 363 N.E.2d 779, 781 (1977). In cases where, as here, there is no intentional misconduct, any damages caused by the broker's failings can be rectified by a negligence action. It seems to us that it is not always necessary or fair to require the broker in addition to forego the commission.

■ There are two major reasons in this case why Meyeres' negligence should not deprive it of its commission. First, Wakefield's acceptance of Konetski's offer on December 23, and his immediate notification to Veach's wife, cured his earlier breach of duty in declining to take Konetski's bid.[5] Second, it appears that Wakefield's negligence in failing to indicate Konetski's acceptance of the easement was immaterial, as Veach seems to have reached agreement with Flodin by the time that Konetski first expressed interest in the property.[6]

■ Veach also argues that his contacts with Flodin during the exclusive listing period were not such that the final sale, on December 30, should be covered by the agreement. This, however, is a question of fact, which the trial court decided adversely to Veach. In light of Flodin's testimony, especially his insistence that he and Veach reached agreement before the 30th, we cannot conclude that the trial court was clearly in error.[7]

The judgment of the superior court is AFFIRMED.

---

**3.** *See* Restatement (Second) of Agency § 379(1) (1958):

Unless otherwise agreed, a paid agent is subject to a duty to the principal to act with standard care and with the skill which is standard in the locality for the kind of work which he is employed to perform and, in addition, to exercise any special skill that he has.

**4.** *See id.* § 469 which states in part:

An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty.

By implication, other forms of agent misconduct do not *per se* impair the agent's entitlement.

**5.** *See* by analogy U.C.C. § 2–508(1) (AS 45.05.-146(a)):

Where any tender or delivery by the seller is rejected because non-conforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

**6.** The facts set out earlier suggest that the agreement was probably reached on the 17th, during Veach's visit with Flodin to Clem Stephenson's office. Konetski's affidavit leads us to believe that his first visit to the Meyeres office was made about the same time.

**7.** Alaska R.Civ.P. 52(1) states in part:

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.