Argued and submitted November 8, reversed and remanded December 11, 1984, rehearing denied January 15, 1985

## LINDLAND et al,
*Respondents on review,*

*v.*

## UNITED BUSINESS INVESTMENTS, INC.,
dba International Business Associates,
*Petitioner on review.*

(CC A8012-07103; CA A26549; SC S31024)

693 P2d 20

Lee M. Hess, of Swire, Riebe & Hess, Portland, argued the cause and filed the petition and briefs for petitioner on review.

Randall L. Dunn, of Copeland, Landye, Bennett and Wolf, Portland, argued the cause for respondents on review. With him on the brief were David N. Goulder and Robert B. Hopkins, Portland.

JONES, J.

**JONES, J.**

This action was brought by plaintiffs, sellers of a business, against defendant, United Business Investments, Inc. (UBI), a broker engaged in listing and selling businesses, to recover damages incurred as a result of an alleged breach of UBI's fiduciary duty toward plaintiffs. Judgment was entered on a jury verdict for plaintiffs in a total amount of $259,431.72, plus interest in the amount of $41,111.74. The Court of Appeals reversed the award of $50,000 damages for impairment of credit but affirmed the judgment in all other respects. UBI petitioned for review.[1]

In March, 1980, plaintiffs entered into a listing agreement with UBI for the sale of their corporate business, Royal Chemical Company, doing business as the Minkler Company. Incident to the execution of this agreement, UBI told plaintiffs that UBI would evaluate potential purchasers for financial stability and managerial capability. UBI also gave plaintiffs a brochure which contained representations that UBI would select only qualified buyers and would advise against any sale disadvantageous to the continued success of the business. Plaintiffs testified that they relied on those representations in deciding to list their business with UBI.

UBI found and presented two potential buyers, Bales and McLeod. After examination of Bales' and McLeod's financial statements, which were provided to plaintiffs by UBI, plaintiffs expressed concern to UBI about the buyers' financial liquidity. Plaintiffs claim that UBI assured them that Bales and McLeod had additional available funds not listed in their financial statements in the approximate sum of $300,000.

On May 28, 1980, plaintiffs sold all their stock in the Minkler Company to Basic Resource, a corporation newly formed by Bales and McLeod. Pursuant to the terms of the stock purchase agreement, plaintiffs received a down payment of $60,000 with the balance of $150,000 payable in 120 equal monthly installments, interest to accrue at 12 percent per

---

[1] Plaintiffs did not cross-petition the reversal of the damages award for impairment of credit.

annum. Basic Resource agreed to assume various other contractual obligations previously entered into by plaintiffs relating to the business. UBI received a brokerage commission of $17,850.

Within a few months, Basic Resource, Bales and McLeod defaulted on their payments to plaintiffs and on the liabilities assumed in the acquisition. By then the Minkler Company was insolvent and its assets were turned over to The Oregon Bank, which had provided a line of credit to the company.

According to plaintiffs' evidence, after the default plaintiffs learned that the $60,000 down payment was provided by a third party, Binford, and that Bales and McLeod did not have the additional funds as represented by UBI prior to the closing.

Plaintiffs brought an action in tort against UBI, alleging that UBI breached its fiduciary duty to plaintiff by misrepresenting or failing to disclose and fully explain the following facts:

"(a) that Hugh McLeod, Randle D. Bales and Basic Resource Corporation had insufficient cash from their own resources to make the initial $60,000 downpayment called for by the Stock Purchase Agreement;

"(b) that the $60,000 downpayment in fact was borrowed by Hugh McLeod, Randle D. Bales and Basic Resource Corporation from Lindley C. Binford, Jr., whom McLeod and Bales had agreed to make a shareholder in The Minkler Company;

"(c) that Hugh McLeod, Randle D. Bales and Basic Resource Corporation were not to be the only investors in and owners of The Minkler Company, but instead, Mr. Lindley C. Binford, Jr. was also to be an investor and co-owner without being either a signator to or guarantor of the Stock Purchase Agreement.

"(d) that Hugh McLeod, Randle D. Bales and Basic Resource Corporation did not have sufficient cash or other financial resources, in addition to the downpayment, available to invest in The Minkler Company to enable it to continue in business over time and to otherwise perform their obligations under the Stock Purchase Agreement."

Plaintiffs further alleged that these facts were material, and

had they known the facts they either would not have sold the Minkler Company or would have sold it only with Binford's personal guarantee.

UBI raises 23 assignments of error, including challenges to various jury instructions and the sufficiency of evidence. We limit our review to the assignment of error pertaining to the jury instruction allocating the burden of proving full disclosure to the defendant.

The defendant assigns as error the following instruction given by the trial court:

"As to plaintiffs' claim for breach of fiduciary duty, defendant has the burden of proving by a preponderance of the evidence that it has fully performed its duty of full, fair and frank disclosure."

Defendant took exception to this instruction as follows:

"* * * [D]efendant excepts to the instruction that the defendant has the burden of proving full and faithful performance of its duty to plaintiff[s] on the ground that the burden of proof as to that issue, as well as all other issues, should be on the plaintiffs and there is no evidence of any self-dealing in this case, which is the only situation where the burden of proof would be on the defendant."

Defendant does not dispute that as a fiduciary, UBI had a duty of full, fair and frank disclosure. Rather, UBI's objection to the trial court's instruction focuses on the allocation of the burden of proving full disclosure to the broker where the broker was neither involved in a conflict of interest[2] with the plaintiffs nor otherwise involved in self-dealing.

Oregon Evidence Code Rule 305 states:

"A party has the burden of persuasion as to each fact the existence or nonexistence of which the law declares essential to the claim for relief or defense the party is asserting."

The legislative commentary to OEC 305 defines "burden of

---

[2] "Conflict of interest" encompasses situations in which the agent is acting entirely or substantially for the agent's own benefit and situations in which the agent is acting on behalf of a third party whose interest is adverse to that of the principal. For the purposes of our discussion in this case, we refer to the former situation as "self-dealing" and the latter as "conflict of interest."

persuasion" as the "obligation of a party to produce a particular conviction in the mind of the trier of fact as to the existence or nonexistence of a fact." The commentary further explains:

> "Rule 305 indicates that the burden of persuasion as to a particular fact rests on the party to whose case the fact is essential. It should be noted that the rule does *not* attempt to indicate what facts are essential to any particular claim for relief or defense. The elements of a prima facie case or defense are determined by substantive law, not by the law of evidence." (Original emphasis.)

■ Plaintiffs assert that the substantive law in this state dictates a result in plaintiffs' favor. It is true that in cases involving breach of fiduciary duty by a broker in which we have discussed allocation of burden of proof, this court has consistently placed the burden of proving full disclosure on the broker, whether the broker is plaintiff or defendant to an action. *Starkweather v. Shaffer,* 262 Or 198, 497 P2d 358 (1972); *Widing v. Jensen, Real Estate Com.,* 231 Or 541, 373 P2d 661 (1962); *Prall v. Gooden,* 226 Or 554, 360 P2d 759 (1961); *Parker v. Faust,* 222 Or 526, 353 P2d 550 (1960). Close scrutiny of these cases and the authority cited therein reveals, however, that in each case it was alleged and proved that the broker was engaged in self-dealing or was otherwise involved in a conflict of interest with the principal. No self-dealing or conflict of interest was alleged or proved in the case at bar.[3]

This court first discussed the burden of proving full disclosure in the case of *Parker v. Faust, supra.* In *Parker,* plaintiffs sought to recover profits alleged to have been received by the defendant real estate agents upon the sale of real property purchased by the agents from plaintiffs. The court assigned the burden of proving full disclosure to the defendant brokers, citing numerous cases from other jurisdictions as support. Each of those cases involves brokers engaged in self-dealing. The court also cited as support Restatement (Second) Agency § 389 (1958). This section states:

> "Unless otherwise agreed, an agent is subject to a duty not to deal with his principal as an adverse party in a transaction

---

[3] The mere fact that the broker stands to earn a commission for his efforts on behalf of the principal does not, without more, establish that the broker is engaged in self-dealing or has a conflict of interest with the principal.

connected with his agency without the principal's knowledge."

*Comment e* to § 389 specifically allocates to the agent the burden of proving satisfaction of the duties imposed by this section.

In *Prall v. Gooden, supra,* this court again placed the burden of proving full disclosure on an agent involved in self-dealing, relying on Restatement, *supra,* § 390, which states:

> "An agent who, to the knowledge of the principal, acts on his own account in a transaction in which he is employed has a duty to deal fairly with the principal and to disclose to him all facts which the agent knows or should know would reasonably affect the principal's judgment, unless the principal has manifested that he knows such facts or that he does not care to know them."

*Comment g* to § 390 places the burden of proof on the agent to show satisfaction of the duties imposed by this section.

■ Sections 389 and 390 are specific applications of the duty of loyalty an agent owes to the principal. Restatement, *supra,* § 387, *comment a* at 201. Both sections contain language to the effect that an agent may act on his own behalf in a transaction connected with the agency, provided that the principal manifests that he knows or does not care to know that the agent is so involved. Thus, it is logical and appropriate that in an action for breach of the fiduciary duty of loyalty, the principal need only bear the burden of proving that the agent acted on the agent's own behalf in a transaction connected with the agency. This alone establishes the breach of duty: conflict of interest or self-dealing *is* the breach of duty. The burden then falls on the agent to prove that the principal knew or did not care to know that the agent was acting on his own behalf in the transaction. Full disclosure in this situation, in effect, is an affirmative defense to the prima facie breach of the duty created by the conflict of interest.

The duty alleged to have been breached in this case was the duty of an agent to disclose material facts to the principal, which originates in the general duty of an agent to exercise care. *Monty v. Peterson,* 85 Wash 2d 956, 960, 540 P2d 1377 (1975). The duty of undivided loyalty is not at issue, an

essential distinguishing factor between this case and our prior precedent in this area of law.

The duty to give information to the principal is described in Restatement, *supra*, § 381 at 182.

> "Unless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person."

In contrast to §§ 389 and 390, the commentary to this section is silent as to which party bears the burden of proving that the duty was fulfilled.

At this juncture we find it instructive to examine how the substantive law of other jurisdictions resolves this issue. In *Monty v. Peterson, supra,* plaintiffs sued defendant brokers for the amount of the brokers' commission, claiming that the defendants had negligently failed to inform them of restrictive covenants materially affecting the value of a parcel of land received in a real estate transaction. Although the issue in *Monty* was the extent of a broker's liability for nondisclosure, the court discussed the burden of proof. This was necessitated by plaintiffs' argument on appeal that defendants were involved in a conflict of interest in the nature of a dual agency, and that failure to disclose the dual agency to the principal was dispositive of the case. The court distinguished the allocation of burden of proof in conflict of interest cases from those not involving a conflict of interest:

> "Respondents argue in their brief that, since there is nothing in the record indicating that petitioners disclosed the fact of this dual agency to them, the trial court's award to them of the broker's commission should be upheld under *Investment Exch. Realty, Inc. v. Hillcrest Bowl, Inc.,* 82 Wn.2d 714, 513 P.2d 282 (1973). It is true that the *Investment Exchange* case does put the burden on the broker to show that the fact of any dual agency relationship was disclosed to his or her clients, *but that burden can be imposed only where nondisclosure of a dual agency is made a basis for an aggrieved client's suit for damages.* Here respondents' complaint did not clearly allege any wrongful nondisclosure of the dual agency, and the issue was not explored by either side at trial. At oral argument in this court, petitioners' counsel

stated that both respondents and the Petersons were well aware of petitioners' dual employment, and respondents' counsel did not dispute this contention. We thus do not believe that petitioners' duty under *Investment Exchange* is properly at issue in this case." 85 Wash 2d at 956 n 1 (emphasis added).

During the course of its opinion, the court emphasized the distinction between nondisclosure of a fact that impugns the agent's ability to exercise undivided loyalty, and a nondisclosure violating the general duty of ordinary care. On the duty of undivided loyalty, the court in *Monty* quoted the following passage from *Mersky v. Multiple Listing Bureau of Olympia, Inc.,* 73 Wash 225, 437 P2d 897 (1968):

> "* * * 'It is of no consequence * * * that the broker may be able to show that the breach of his duty of full disclosure and undivided loyalty did not involve intentional or deliberate fraud, or did not result in injury to the principal, or did not materially affect the principal's ultimate decision in the transaction. The rule and the available remedies, instead, are designed as much to prevent fraud as to redress it, and follow directly upon the heels of the broker's deliberate or innocent failure to timely and fully disclose to his principal the fact of the interdicted relationship, for the reason that the very existence of the relationship may have corroded the broker's obligation of undivided loyalty, may have been a material circumstance to the principal, or may have affected his actions or decisions in the course of the transaction involved.' " *Monty v. Peterson, supra,* at 959-60.

In *Crosby v. Ashley,* 291 So2d 12 (Fla App 1974), a broker brought an action to recover a commission on the sale of defendant's real property. The defendant asserted as an affirmative defense nondisclosure of a fact material to the transaction. The controversy centered on a jury instruction regarding the defendant's affirmative defense to the commission's claim and defendant's counterclaim for damages for breach of fiduciary duty. Because the jury instruction failed to distinguish the two claims, a judgment for the broker was reversed in part. However, the court held that the instruction properly assigned the burden of proving nondisclosure to the defendant. The court stated:

> "With regard to the counterclaim [for breach of fiduciary duty], the charge was appropriate, since in order to recover on his counterclaim the defendant was required to prove both

nondisclosure and damages resulting therefrom. * * *" 291 So2d at 14.

In other words, since the seller claimed breach of fiduciary duty, seller had the burden of proof as to nondisclosure.

The following cases also support UBI's contention that where a claim of nondisclosure does not relate to self-dealing, it is incumbent upon the principal to prove non-disclosure: *Robertson v. Reed,* 35 Ill App 3d 525, 341 NE2d 402 (1976) (directed verdict against breach of fiduciary duty claim, not involving conflict of interest, upheld where claimant produced insufficient evidence); *Carroll v. Sparks,* 218 A2d 517 (DC Ct App 1966) (directed verdict against breach of fiduciary duty claim which did not involve conflict of interest upheld where claimant failed to prove either breach by broker or damages); *Puget Sound Marina, Inc. v. Jorgensen,* 3 Wash App 476, 475 P2d 919 (1970) (in action by broker against vessel seller for commission on sale of vessel, seller had burden of proof on affirmative defense that broker breached his fiduciary obligations to seller).

 We are persuaded that these cases present the better rule. Breach is an essential element of an action for breach of fiduciary duty. The party claiming a breach of fiduciary duty must plead and prove the breach, and must show that the breach caused an identifiable loss or resulted in injury to the party. Breach of the duty of loyalty is established by proof that the agent had a conflict of interest or was self-dealing. It is incumbent upon the agent to defend against the claim by showing full disclosure, or some other matter in defense.

 In this case, plaintiffs alleged the breach to be non-disclosure of material facts or misrepresentation. Plaintiffs must establish this essential element of their claim. It is not sufficient for the plaintiffs to merely allege breach. Plaintiffs must show in what respect the fiduciary duty was breached, and breach must be proved by a preponderance of the evidence.

 The relevant portions of the jury instructions read:

"A party has the burden of proving by a preponderance of the evidence any claim made in that party's pleadings. In the absence of such proof, the party cannot prevail as to that claim.

> "As to plaintiffs' claim for breach of fiduciary duty, defendant has the burden of proving by a preponderance of the evidence that it has fully performed its duty of full, fair and frank disclosure."

The first paragraph is correct. The second paragraph, because it assigned proof of an essential element of plaintiffs' claim to the defendant, was incorrect and prejudicial.

■ The Court of Appeals reversal of the award for impairment of credit not being before us is, therefore, the law of the case and not subject to retrial. Except in that respect, the Court of Appeals decision is reversed and remanded for a new trial.