[Nos. 4049–6–III; 4050–0–III. Division Three. January 14, 1982.]

PORTER A. WILKINSON, ET AL, *Respondents,* v. E. M. SMITH, ET AL, *Defendants,* SHERWOOD & ROBERTS, INC., ET AL, *Appellants.*

*Peter Witherspoon, Duane M. Swinton, Witherspoon, Kelley, Davenport & Toole, Martin G. Weber,* and *Lukins & Annis,* for appellants.

*Richard C. Eymann, Steven Jones,* and *Huneke, Eymann & Jones,* for respondents.

McINTURFF, C.J.—Sherwood and Roberts, Inc., and Robert Wesner appeal from a judgment relating to the rescission of a real estate contract and a violation of the Consumer Protection Act.

Eugene M. Smith and Robert Wesner entered into a partnership in January 1978, creating E. M. Smith and Associates, its purpose being the acquisition of land developments for resale. They were licensed real estate salespersons employed by Sherwood and Roberts. Mr. Smith contended the partnership operated as a separate entity while others said Smith and Associates held themselves out as a commercial subdivision of Sherwood and Roberts.

In early 1978, there was considerable speculation that Keytronics, a computer firm, would locate a plant in Chewelah, Washington. On March 22, 1978, Mr. Smith, on behalf of Smith and Associates, entered into a joint venture agreement with Mr. Gene Schalock, an owner and principal of Crestmore Park, which is a partnership owning a parcel of land located in Chewelah. The purpose of this joint venture was to acquire land and other properties in the Chewelah area to promote manufacturing relocation and resell at a profit. Pursuant to the joint venture, any proceeds from the sale above $62,430 were to be divided between the owners and Smith and Associates.[1]

Mr. Smith subsequently contacted Mr. Wilkinson, a manager of a local building supply company, and advised him of a buyer for the Crestmore Park area who would like to build some rental apartments at that location. Mr. Wilkinson expressed interest and on March 27, 1978, a meeting was held at the offices of Sherwood and Roberts in Spokane. Attending the meeting were Mr. Smith, Mr. Wesner, Mr. Wilkinson, and Sid Paul, a loan officer of Sherwood

---

[1]On March 8, 1978, prior to the joint venture between E. M. Smith and Associates and Mr. Schalock of Crestmore Park, an offer to sell a portion of Crestmore Park was made by Mr. Phillip Skok, a partner in Crestmore Park, to Smith and Associates. The offer included the sale of two houses. The amount assigned to the two houses was $76,000 in a combined offer of $138,730, which placed a value on the real property of $62,730.

and Roberts. It became apparent Sherwood and Roberts was not going to loan money for construction of the buildings unless the owner of the property acted as a builder. Mr. Wilkinson then agreed to become the owner of the property on an interim basis during the construction period to accomplish the end result of having the buildings constructed. An earnest money agreement for $99,322 was prepared by Mr. Smith as agent for Sherwood and Roberts, and signed by Mr. Wilkinson. At this same meeting Mr. Wilkinson also accepted, as seller, an earnest money agreement from Dr. Charles Smick, the intended purchaser of the Crestmore Park area. Pursuant to this agreement Mr. Wilkinson was to construct for Dr. Smick four triplex apartments on the property for $301,694 upon completion.

At closing, Mr. Wilkinson signed a document entitled "Closing Instructions Buyer and Seller" which indicated Sherwood and Roberts was to recover a commission of 6 percent, and that Mr. Wilkinson had executed an installment note for $10,000. Mr. Wilkinson believed the note was for Smith and Associates' commission. But then the underlying reason for this lawsuit occurred—Mr. Wilkinson was unable to receive approval of the Chewelah Planning Commission to build the apartments. The earnest money agreements were silent regarding zoning contingencies. On August 29, 1978, Mr. Wilkinson's attorney formally demanded repayment of the purchase price from Sherwood and Roberts and Smith and Associates:

> Mr. Wilkinson herewith makes demand for the sum of $99,000.00 together with interest from the date of his loan and his costs involved to date. Unless arrangements are made for the payment within 10 days of the date of this letter, my client will seek an immediate rescission of the purchase from Messrs. Schalock, Skok and Hafer and will take whatever legal action is necessary to recover his purchase price from the above gentlemen . . .

The trial judge rescinded the contract because of a mutual mistake of fact regarding zoning approval. The court ordered the reconveyance of the property to the

defendants. The $10,000 promissory note was cancelled. Messrs. Skok, Hafer, Schalock, Smith and Wesner were to jointly repay the purchase price plus interest from August 29, 1978. On the basis of this real estate agreement the court awarded attorney's fees of $15,000 to Mr. Wilkinson against Messrs. Smith, Wesner, Skok, Schalock and Hafer[2] and under the Consumer Protection Act against Mr. Smith, Mr. Wesner and Sherwood and Roberts. The court rejected Mr. Wilkinson's demand for lost profits and mental distress.[3] From this decision the parties appeal raising issues of (1) the impact of the Consumer Protection Act (RCW 19.86) under these circumstances, (2) the effect of the rescission of the contract, and (3) limiting the award of attorney's fees.

CONSUMER PROTECTION ACT

Initially, Sherwood and Roberts and Mr. Wesner contend the court erred in determining the activities of E. M. Smith and Associates and Sherwood and Roberts constituted a violation of the Consumer Protection Act, RCW 19.86.020: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." We disagree and hold that the breach of a fiduciary duty prescribed by our Consumer Protection Act exists independently of the rescinded contract.

Sherwood and Roberts and its agents, Messrs. Smith and Wesner, had a duty of full disclosure which required the utmost good faith and avoidance of representing any unknown interest antagonistic to that of Mr. Wilkinson. *Aungst v. Roberts Constr. Co.*, 95 Wn.2d 439, 442–43, 625 P.2d 167 (1981); *Mersky v. Multiple Listing Bureau of Olympia, Inc.*, 73 Wn.2d 225, 228–29, 437 P.2d 897 (1968). Moreover, Washington law imposes liability when one fails

---

[2]Mr. Hafer was also a partner in the Crestmore Park partnership.

[3]Mr. Wilkinson's complaint demanded rescission and alleged nondisclosure, fraud and violations of the Consumer Protection Act.

to reveal matters within one's knowledge where there is a duty to speak. *See Boonstra v. Stevens–Norton, Inc.,* 64 Wn.2d 621, 625, 393 P.2d 287 (1964). *See also* Restatement (Second) of Torts § 551 (1977).[4] In *Cogan v. Kidder, Mathews & Segner, Inc.,* 24 Wn. App. 232, 239, 600 P.2d 655 (1979), the court mentioned the following agency principles:

> By being the agent of the estate, they were obligated to exercise reasonable care, skill and judgment in securing for plaintiff the best bargain possible; to scrupulously avoid representing any interests antagonistic to that of the plaintiff in a transaction involving the estate's property, or otherwise self–dealing with that property, without the explicit and fully informed consent of plaintiff. They were also obligated in all instances to make a full, fair and timely disclosure to the plaintiff of all facts within the knowledge or coming to the attention of the defendants which are, or may be material in connection with the matter for which defendants were employed, which *might affect* the plaintiff's rights and interest and influence his actions.

(Italics ours.) In the instant case, Sherwood and Roberts was responsible for the conduct of its agents under the law of agency and the real estate licensing act, RCW 18.85.155;[5]

---

[4]That section provides in pertinent part:

"(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

"(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

"(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; . . ."

[5]RCW 18.85.155 states in part:

Responsibility for any salesman, associate broker or branch manager in conduct covered by this chapter shall rest with the broker to which such licensees shall be licensed.

In addition to the broker, a branch manager shall bear responsibility for salesmen and associate brokers operating under the branch manager at a branch office.

Testimony of Sherwood and Roberts' branch supervisor indicated actual knowl-

RCW 18.85.230(5), (10), (25), and (26).[6] The failure of Sherwood and Roberts through Messrs. Smith and Wesner to disclose their interest in the Crestmore Park property to Mr. Wilkinson constituted a violation of RCW 19.86.020 (Consumer Protection Act). Findings of fact Nos. 20 and 22 stated:

20. In the transaction involving the sale of Crestmore Park property to plaintiffs, defendants, E. M. Smith and Robert Wesner, acting on behalf of and under the auspices of defendant, Sherwood & Roberts, Inc., engaged in the following "*conduct*": Defendant, E. M. Smith, failed to disclose to plaintiffs the fact that he and defendant, Robert Wesner, d/b/a E. M. Smith and Associates, would share in the proceeds of the land purchased by plaintiffs from Crestmore Park, said share amounting to approximately $19,000.00, including a $10,000.00 promissory note executed in favor of E. M. Smith and Associates by plaintiffs. These defendants had a duty to disclose this material fact to plaintiffs. Further, defendant, Sherwood & Roberts, Inc., had constructive notice of the fact that defendants, E. M. Smith and Robert Wesner, were to share in the proceeds of the sale of the subject property and that this fact was not disclosed to plaintiffs.

---

edge of the Smith and Associates partnership but she testified that she felt uncomfortable with Messrs. Smith and Wesner since she knew little of commercial sales and received little guidance from her superiors.

[6]RCW 18.85.230 states the director may deny the license of any holder who is guilty of:
"(5) Knowingly committing, or being a party to, any material fraud, misrepresentation, concealment, conspiracy, collusion, trick, scheme or device whereby any other person lawfully relies upon the word, representation or conduct of the licensee;
". . .
"(10) Committing any act of fraudulent or dishonest dealing or a crime involving moral turpitude, and a certified copy of the final holding of any court of competent jurisdiction in such matter shall be conclusive evidence in any hearing under this chapter;
". . .
"(25) In the case of a broker licensee, failing to exercise adequate supervision over the activities of his licensed associate brokers and salesmen within the scope of this 1972 amendatory act;
"(26) Any conduct in a real estate transaction which demonstrates bad faith, dishonesty, untrustworthiness or incompetency;"

. . .

22. Defendants, E. M. Smith, Robert Wesner and Sherwood & Roberts, Inc., were agents of plaintiffs in the subject real estate transactions. As such, these defendants owed a fiduciary duty to plaintiffs to act in plaintiffs' best interests at all times, to inform plaintiffs of all facts that might impact on their decision to purchase the subject real property, not to conceal any material facts from plaintiffs, and to at all times act with the utmost fidelity and good faith towards plaintiffs.

Substantial evidence supports these findings.

Sherwood and Roberts contends Mr. Wilkinson received a copy of the earnest money agreement signed by E. M. Smith and Associates in its separate identity as seller, and secondly, the closing documents indicated the separate identities of E. M. Smith and Associates and Sherwood and Roberts, since Sherwood and Roberts was to receive a commission of 6 percent while E. M. Smith and Associates would receive an installment note of $10,000 (allegedly not for commission).

The court concluded Sherwood and Roberts, through its agents, Messrs. Smith and Wesner, did not disclose to Mr. Wilkinson[7] the joint venture between E. M. Smith and Associates and Crestmore Park. Mr. Wilkinson said there was no discussion of the joint venture agreement prior to closing nor did he receive a copy of the earnest money agreement containing Mr. Smith's signature as seller. He understood the seller to be only Crestmore Park, and the $10,000 note to be a waiver of immediate payment of Mr. Smith's commission. Even if Mr. Wilkinson did receive a copy of the real estate sale and purchase agreement this did not amount to "explicit consent . . . based upon a full disclosure by the realtor of all pertinent and material facts

---

[7]Unchallenged finding of fact No. 8 states:

"Prior to March 27, 1978, defendants, E. M. Smith and Gene A. Schalock, entered into a joint venture to accomplish the sale of the Crestmore Park property. Gene A. Schalock signed this agreement in his capacity as a principal of Crestmore Park. This joint venture was ratified by Crestmore Park. Pursuant to this joint venture, defendants, E. M. Smith, Robert Wesner and Crestmore Park, were to share the proceeds of any sale of the Crestmore Park property."

within the realtor's knowledge bearing upon the transaction." *Frisell v. Newman,* 71 Wn.2d 520, 526, 429 P.2d 864 (1967). The failure of Messrs. Smith and Wesner, as agents of Sherwood and Roberts, to expressly disclose their pecuniary interest via the E. M. Smith and Associates–Crestmore Park joint venture, together with their failure to advise Mr. Wilkinson of an earlier sales proposal, were violations within the ambit of "unfair or deceptive acts or practices" in RCW 19.86.020. In *Iriart v. Johnson,* 75 N.M. 745, 749, 411 P.2d 226, 228 (1965), the New Mexico Supreme Court determined a broker violated its fiduciary duty by failing to inform the principal of the market value of the purchased land in relation to comparable sales of other property in the area:

> We think the trial court was in error in concluding that notwithstanding the broker's failure to make full disclosure concerning the fact that he was the purchaser in fact and his failure to disclose to his principal facts within his knowledge concerning land values and market prices, such violations of his duty as a broker were of no consequence because the trustees and the beneficiaries received the full market value of the land as of the date of its transfer. *Perhaps the trustees would have sold to Pierce even if they had known the facts concerning land values and market prices which Johnson failed to disclose to them, but that is not the controlling consideration.* Neglect to communicate to his principal all facts which *might* influence the principal's action renders the broker liable to his principal.

(Italics ours.)

██ Further, as the trial court noted, these actions contravene provisions of RCW 18.85.230.[8] As enunciated in *Dempsey v. Joe Pignataro Chevrolet, Inc.,* 22 Wn. App. 384, 393, 589 P.2d 1265 (1979):

> [T]o recover for a per se violation of the Consumer Protection Act [one] must prove: (1) the existence of a pertinent statute; (2) its violation; (3) that such violation was the proximate cause of damages sustained; and (4) that they were within the class of people the statute

---

[8]See footnote 6.

sought to protect.

Here, the court correctly noted violations of RCW 18.85-.230. Mr. Wilkinson relied on the representations of Messrs. Smith and Wesner; he indicated he may have approached the matter differently had he known all the facts. But for the failure to disclose the March 8, 1978 letter of intent to sell from the owners of Crestmore Park[9] and the pecuniary interest of Smith and Associates, the agreement might not have been consummated or costs incurred. *See Cogan, supra* at 239; *see also Iriart, supra.* There can be little doubt the real estate industry, being heavily regulated, is within the sphere of trade and commerce to the extent that it affects the public interest. *See Anhold v. Daniels,* 94 Wn.2d 40, 46, 614 P.2d 184 (1980);[10] *Smith v. Galland & Assocs., Inc.,* 24 Wn. App. 632, 636–37, 602 P.2d 1197 (1979). The trial court correctly found a violation of the Consumer Protection Act.

 An award of attorney's fees and costs under the Consumer Protection Act is consistent with the statutory directive of the act: "Any person . . . may bring a civil action . . . to recover . . . costs of the suit, including a reasonable attorney's fee . . ." RCW 19.86.090. *See also State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.,* 87 Wn.2d 298, 314, 553 P.2d 423 (1976); RCW 19.86.920. The

---

[9]See footnote 1.

[10]In *Anhold* our Supreme Court noted, at page 46, the presence of public interest is demonstrated when it is established that:
(1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damages brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.
Here, through the conduct of Messrs. Smith and Wesner, Mr. Wilkinson was solicited and induced to act. The evidence indicates that if Mr. Smith had not succeeded in inducing Mr. Wilkinson, he would have approached others. Messrs. Smith and Wesner were in the business of soliciting investments. Additionally, conclusion of law No. 7 read:
The defendant, Sherwood & Roberts, Inc., is engaged in trade and commerce in a business legislatively declared to be affected by the public interest.
No error has been assigned to this conclusion.

principal–agent relationship between Sherwood and Roberts and Messrs. Smith and Wesner extends responsibility for their actions to Sherwood and Roberts under the Consumer Protection Act. Additionally, the liability of one engaged in a joint venture, for the acts of his or her associates, is founded on agency principles which hold that each member of a joint venture acts as both principal and agent of his co–venturers as to those things done within the scope of the venture and for its benefit. 46 Am. Jur. 2d *Joint Ventures* § 57 (1969); H. Reuschlein & W. Gregory, *Agency and Partnership* § 266 (1978). *See also Refrigeration Eng'r Co. v. McKay,* 4 Wn. App. 963, 973, 486 P.2d 304 (1971). Consequently, there is joint and several liability between the co–venturers, Messrs. Smith, Wesner, Skok, Schalock and Hafer under the Consumer Protection Act. *See Aungst v. Roberts Constr. Co., supra* at 442. A trial court's decision will be sustained on any appropriate ground within the pleadings and proof.[11] *Timms v. James,* 28 Wn. App. 76, 81, 621 P.2d 798 (1980). The award of attorney's fees is affirmed on the basis of the Consumer Protection Act.

## THE EFFECT OF RESCISSION

Sherwood and Roberts also assigns error to the court's award of interest paid on monies borrowed to acquire the property. It argues that basing interest from the rescission date of August 29, 1978, was unwarranted since the decision to rescind was not made until the final day of trial, July 27,

---

[11]The trial court awarded attorney's fees against Messrs. Skok, Schalock and Hafer based upon the sale and purchase agreement. Paragraph 12 of the rescinded agreement states in part:

In the event that either the seller, purchaser, or agency shall be caused to secure legal services or advice *to enforce any of the respective rights hereunder,* the successful or innocent party with respect to this enforcement provision shall be entitled to costs and reasonable attorney's fees.

The clause does not specifically allow for attorney's fees upon cancellation. If one elects to rescind a contract he must rescind in toto and the terms of the abrogated contract have no influence whatever upon subsequent rights of the parties, including a provision for payment of attorney's fees. *See Pickinpaugh v. Morton,* 268 Ore. 9, 519 P.2d 91, 94–95 (1974). Consequently, we reject the award of attorney's fees based upon the agreement and rely on the broad scope of the Consumer Protection Act.

1979.

As indicated initially in this opinion, the letter dated August 29, 1978, from the Wilkinsons' attorney to both Sherwood and Roberts and Smith and Associates gave sufficient notice of their intent to seek immediate rescission. A subsequent letter, dated April 13, 1979, from the Wilkinsons to Mr. Hafer, a partner in Crestmore Park, which offered the property for sale, did not negate the intent to rescind the contract, rather it indicated an effort to mitigate not only their damages, but also those of the defendants. *Wickre v. Allen,* 58 Wn.2d 770, 776–77, 364 P.2d 911 (1961); *Davis v. Pennington,* 24 Wn. App. 802, 804, 604 P.2d 987 (1979).[12]

■ Although there was no testimony regarding the exact amount of interest paid by the Wilkinsons, testimony did reveal they had been paying approximately $900 per month in interest since April or May 1978. In noting no evidence upon which to compute the interest[13] the court observed:

> It may be that some testimony might be essential on that and if so, I would permit that to be a matter to be reopened to that extent, I don't think that is any different than the attorneys' fees problem for that matter.

Further, the record indicates a willingness by plaintiffs' counsel to have Mr. Wilkinson testify during the hearing on findings of fact and conclusions of law. Thus, having decided to award damages for interest and taxes, supplementation by affidavit after the trial did not prejudice Sherwood and Roberts or Messrs. Smith and Wesner. The interest award of the difference between the statutory rate and the rate paid by the Wilkinsons was proper.

---

[12]The record indicates all counsel were informed of Mr. Wilkinson's decision to mitigate in a letter dated April 4, 1979, from his attorney:

> [T]he financial impact upon my client arising out of the allegations in the complaint have been severe. Because it is taking some time to get to trial and get the matter resolved, Mr. Wilkinson would like to mitigate his losses but not be put in a position where he is accused of treating the property as his own in contravention of his prayer for rescission.

[13]Mr. Wilkinson filed an affidavit on June 12, 1980, that $19,943 had been paid in accrued interest and $419 in property taxes.

Mr. Wesner maintains the Wilkinsons are not entitled to recover against him under rescission since he was not a party to the real estate transaction. We find this contention without merit. Mr. Wesner was a partner in E. M. Smith and Associates. RCW 25.04.150 states:

> All partners are liable:
> (1) Jointly and severally for everything chargeable to the partnership under RCW 25.04.130 and 25.04.140.
> (2) Jointly for all other debts and obligations of the partnership; . . .

*See also Golberg v. Sanglier,* 27 Wn. App. 179, 195, 616 P.2d 1239 (1980). As a member of the joint venture between Smith and Associates and the owners of Crestmore Park, he received $2,500 as proceeds from the sale of the property to Mr. Wilkinson. Thus, Mr. Wesner is jointly and severally liable for the judgment on the basis of his partnership interest in Smith and Associates and the subsequent joint venture agreement. *See Marszalk v. Van Volkenburg,* 24 Wn. App. 646, 650, 604 P.2d 501 (1979).

Mr. Wilkinson's argument for lost profits and mental distress under the rescinded contract cannot be supported. The concept of election of remedies has as its sole purpose the prevention of double redress for a single wrong. *Lange v. Woodway,* 79 Wn.2d 45, 49, 483 P.2d 116 (1971). The doctrine provides that if two or more remedies exist which are inconsistent with one another, a party will be limited to the one chosen. *Melby v. Hawkins Pontiac, Inc.,* 13 Wn. App. 745, 749, 537 P.2d 807 (1975). "Affirmance of the contract and a demand for damages has been held inconsistent with a disaffirmance of the contract and a prayer for rescission." *Melby, supra* at 749. In *Labor Hall Ass'n v. Danielsen,* 24 Wn.2d 75, 81, 163 P.2d 167 (1945), it was noted:

> It may be stated that as a general rule where one has available to him the choice of affirming a contract and suing for damages for an alleged breach thereof, or disaffirming the contract and bringing his action for rescission, the two remedies are inconsistent, and that a selection of one and proceeding thereunder is a bar to resorting to the other remedy.

Mr. Wilkinson's argument for lost profits and mental distress are actions for damages under the contract and cannot be maintained for the reason that he rescinded the contract, therefore there exists nothing upon which to base his claim. The law does not allow a party to rescind a contract and at the same time make use of it as subsisting for the purpose of claiming contractual damages. Such a position is inconsistent with the election to rescind. Additionally, the Consumer Protection Act does not provide for the discretionary award of damages for loss of profit or mental distress.

### Limiting the Award of Attorneys' Fees

Mr. Wilkinson states the court erred in limiting his award of attorneys' fees to $15,000. Finding of fact No. 28 noted:

> 28. Plaintiffs' attorneys' hourly rate of $50.00 is found to be reasonable. Plaintiffs' attorneys' time expended in prosecuting this action (482.35 hours), and likewise, their time expended on the fee petition (74.30 hours) is found to be reasonable. A reasonable attorneys' fee for plaintiffs is $15,000.00.

Mr. Wilkinson assigns error to the last sentence of this finding, arguing that the proper amount, at a minimum, should be $27,800 ($50 x 556 hours).

 It is well settled that the trial court has the discretionary power to limit attorneys' fees to a reasonable amount. *Merrick v. Peterson,* 25 Wn. App. 248, 256, 606 P.2d 700 (1980). An abuse of discretion exists only where no reasonable person would take the position adopted by the trial court. *Griggs v. Averbeck Realty, Inc.,* 92 Wn.2d 576, 599 P.2d 1289 (1979). The Wilkinsons note the judge's determinations were reached following submission of affidavits, extensive testimony of experts regarding the attorney fee issue, as well as argument of counsel. After considering the arguments of counsel the trial judge determined the following:

> I want to set a fee of $15,000.00, which I think is less than certainly the time spent on the case. . . . And the

result, of course, was favorable to the plaintiff, but not necessarily on the basis they—they pursued. And that is something I don't think I can ignore in the sense, at least in this context of deciding what appropriate attorney's fees would be.

Additionally, the judgment read:

5. Plaintiffs are hereby awarded attorneys' fees from all defendants in the amount of $15,000.

The inconsistency in the finding is made clear by the judge's intent derived from his statement from the bench and the judgment entered. We also note that one attorney testified that 200 hours at $50 per hour would be reasonable fees. Two other attorneys testified the requested compensation, plus a "lodestar multiplier", was reasonable.[14] The trial judge indicated he considered all arguments thoroughly in arriving at a figure between the extremes presented. We find no abuse.

Lastly, Mr. Wilkinson requests attorneys' fees on appeal. Washington follows the common law rule that each litigant pays the fees of his attorney and other costs in the absence of an agreement, statute or grounds in equity to the contrary. *Maxwell v. Department of Labor & Indus.*, 25 Wn. App. 202, 205, 607 P.2d 310 (1980). The Consumer Protection Act provides adequate grounds for the award. *See* RCW 19.86.090.

The judgment of the Superior Court is affirmed;[15] the case is remanded to determine the value of attorneys' fees on appeal and a determination of interest damages until the date of payment, pursuant to the judgment entered by

---

[14]The term "lodestar" as used in "lodestar multiplier" means the reasonable hourly rate multiplied by the number of compensable hours, plus a consideration of the contingent nature of success and the quality of the attorney's work as reflected by the complexity and novelty of the issues presented, *Meisel v. Kremens*, 80 F.R.D. 419, 421 (E.D. Pa. 1978).

[15]Because the trial court is affirmed on alternate grounds, Sherwood and Roberts, Inc., the Smiths and the Wesners are jointly and severally liable for the amount of judgment over and above that paid by Crestmore Park.

the trial court.

GREEN and ROE, JJ., concur.

Reconsideration denied April 23, 1982.

Review denied by Supreme Court June 30, 1982.