[No. 13977–1–I.   Division One.   August 5, 1985.]

H. T. HARSTAD, *Appellant,* v. KENNETH FROL, ET AL, *Respondents.*

*Richard E. Jonson,* for appellant.
*Andrew Symons,* for respondents.

PETRIE, J.*—Howard T. Harstad appeals the trial court's summary judgment dismissing his claims against Kenneth Frol, a brokerage agent involved in the sale of Harstad's building. We reverse.

Harstad owned an office building at 1319 Dexter Avenue North in Seattle. In 1979 Harstad arranged to borrow money from Amfac Mortgage Company to remodel the building. The building's primary tenant was Harstad Associates, Inc., which went bankrupt in June 1980. Because of cost overruns on the remodeling, and the loss of Harstad Associates as a tenant, Harstad was compelled to seek a buyer for the 1319 Dexter Building.

A. H. Cohan, a real estate broker, told Harstad that he knew of an interested buyer named Cyril Frol. Cohan stated however that, in order to complete the transaction, Harstad would have to utilize the services of Kenneth Frol, Cyril's son, as a broker. Instead of Cyril personally buying the 1319 Dexter Building, a family owned company called United Management Consultants, Inc. (UMC), was designated as the buyer in a real estate purchase agreement signed by Cyril and Harstad. Cyril, his wife, and three children each owned 20 percent of UMC. Harstad did not learn of K. Frol's 20 percent interest in UMC until K. Frol's deposition was taken after litigation had begun.

K. Frol was Harstad's agent, but assisted UMC in several ways. K. Frol helped UMC with its attempt to assume Amfac's construction loan. K. Frol ordered construction on the 1319 Dexter Building in order to establish a loan commitment from Amfac to UMC, even though it was not required under Amfac's terms with Harstad. Debt from this construction was part of the $63,222.07 that Harstad was required to pay at closing.

Cyril, president of UMC, with K. Frol's encouragement, planned to convert the 1319 Dexter Building into office condominiums. K. Frol was a sales agent for the condomin-

---

*Judge Harold J. Petrie is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

ium project. Harstad did not know of UMC's condominium conversion plans or K. Frol's involvement. Before Harstad's sale to UMC was to close on October 22, 1980, Amfac withdrew its financial support from UMC because it did not wish to finance condominiums. K. Frol was under pressure to close the sale because of the money UMC had put into the building. With the help of another agent, he procured SS Service Corp. On October 28, 1980, UMC assigned its purchaser's interest to SS Service Corp. The other agent assumed that K. Frol had given Harstad all relevant information and relied on K. Frol to make all disclosures.

K. Frol informed Harstad that there was a backup purchaser replacing UMC, but did not immediately reveal the purchaser's identity. On November 10, 1980, Harstad sold the 1319 Dexter Building to SS Service Corp. for $1,610,023.70. Shortly before closing, Harstad was informed by K. Frol that, in order to close, Harstad would have to pay $63,222.07 in debts owed by UMC for costs incurred while attempting to assume Amfac's construction loan to Harstad. The agreement between SS Service Corp. and UMC did not require Harstad to pay these debts. Amfac had extended the repayment dates for Harstad several times, but by November 1980 Amfac was pressuring Harstad to close.

Harstad attempted to locate another prospective buyer, who had contacted him earlier, but was unable to find him on short notice. Harstad did not wish to close because after paying the $63,222.07 he would receive no profit on the sale. However, Harstad felt that he had no alternative because of pressure from Amfac and other creditors. Capretto & Clark, Inc., K. Frol's employer, received $78,000 in commissions from Harstad for the sale. K. Frol's share was $19,000.

Harstad brought this action against K. Frol and Capretto & Clark for violating their fiduciary duties and RCW 18.85, which regulates real estate brokers. Harstad also alleged violation of the Consumer Protection Act, RCW 19.86, and the torts of fraud, conspiracy, and business compulsion

against Capretto & Clark, UMC, A. H. Cohan, C. Frol, and K. Frol. K. Frol obtained an order of summary judgment dismissing all claims against him. This appeal is from that order of summary judgment.

■ An appellate court engages in the same inquiry as the trial court in a motion for summary judgment. *Wilson v. Steinbach*, 98 Wn.2d 434, 656 P.2d 1030 (1982). Summary judgment is proper only if, after considering all facts in the light most favorable to the nonmoving party, reasonable persons could reach but one conclusion. *Wilson*, at 437.

### FIDUCIARY DUTY

Harstad contends that K. Frol's failure to disclose his 20 percent interest in UMC, his involvement in the condominium project, and the details of UMC's assignment to SS Service Corp. violated K. Frol's fiduciary duty to Harstad. Harstad argues that, because of these nondisclosures, he should be reimbursed the $78,000 he paid in commissions as well as receiving $63,222.07 in damages.

K. Frol responds that Harstad sought him as an agent to utilize his familial connection with the president of UMC. K. Frol argues it was of no consequence that he did not reveal his 20 percent interest in UMC, because he had revealed that the president of UMC was his father.

■ When a real estate broker violates a fiduciary duty the broker may forfeit the brokerage commission, and the broker is liable for any losses resulting from the breach of duty. *Cogan v. Kidder, Mathews & Segner, Inc.*, 97 Wn.2d 658, 648 P.2d 875 (1982); *Meerdink v. Krieger*, 15 Wn. App. 540, 550 P.2d 42, *review denied*, 87 Wn.2d 1011 (1976). Real estate brokers have a duty of full disclosure to their clients. This requires the utmost good faith and avoidance of representing any unknown interest antagonistic to their clients. *Wilkinson v. Smith*, 31 Wn. App. 1, 5, 639 P.2d 768, *review denied*, 97 Wn.2d 1023 (1982). While Harstad acquiesced to K. Frol as his brokerage agent, the record does not support K. Frol's speculative assertion that Harstad actively sought him out because of K. Frol's relation-

ship to UMC's president. K. Frol's disclosure that he was the son of UMC's president does not reveal his personal financial interest in UMC. K. Frol's failure to disclose his 20 percent ownership of UMC violates the standards set forth in *Wilkinson* and RCW 18.85.230(24).[1]

From the evidence presented one could conclude that K. Frol's statement, that Harstad had to assume the $63,222.07 of UMC's liabilities in order to close the sale with SS Service Corp., was untrue and motivated to protect K. Frol's personal interest. If so, this violated his fiduciary duty. RCW 18.85.230(5), (26). *Mersky v. Multiple Listing Bur. of Olympia, Inc.,* 73 Wn.2d 225, 437 P.2d 897 (1968).

K. Frol argues that when Harstad accepted the sale to SS Service Corp. he ratified all of K. Frol's actions. K. Frol also contends that Harstad should be estopped from seeking damages, because he failed to indicate at the time of closing that Harstad would hold K. Frol liable for the increased closing costs.

For summary judgment purposes, K. Frol's claimed defenses do not thwart Harstad's cause of action. Ratification is not applicable here, because Harstad was forced to close to protect his interest. Restatement (Second) of Agency § 101 (1958); *see Breedlove v. Holton,* 143 Wash. 347, 255 P. 132 (1927). An estoppel theory is not available to K. Frol because Harstad relied on Frol's nondisclosures and misrepresentations before closing. A party seeking to invoke equitable estoppel must be free from fault. *Atlas Bldg. Supply Co. v. First Indep. Bank,* 15 Wn. App. 367, 550 P.2d 26 (1976).

CONSUMER PROTECTION ACT

Harstad contends that violation of RCW 18.85.230 regulating real estate brokers is a per se violation of the Con-

---

[1]RCW 18.85.230 states in part: "The director may . . . temporarily suspend or permanently revoke or deny the license of any holder who is guilty of: . . .

"(24) Failing to disclose to an owner his intention or true position if he directly or indirectly through third party, purchases for himself or acquires or intends to acquire any interest in, or any option to purchase, property;"

sumer Protection Act, RCW 19.86.

■ At the time of trial, violation of RCW 18.85 had been held a per se violation of RCW 19.86 by Divisions Two and Three of the Court of Appeals. *Wilkinson v. Smith, supra; Nuttall v. Dowell,* 31 Wn. App. 98, 639 P.2d 832, *review denied,* 97 Wn.2d 1015 (1982). Since then, however, the Supreme Court has declared that violation of RCW 18.85 is not a per se violation of the Consumer Protection Act. *Sato v. Century 21 Ocean Shores Real Estate,* 101 Wn.2d 599, 681 P.2d 242 (1984). Generally, decisional law is given retroactive effect unless parties were justified in relying in good faith on prior law. *Bradbury v. Aetna Cas. & Sur. Co.,* 91 Wn.2d 504, 589 P.2d 785 (1979). Here the parties have not relied on prior law; therefore, current law must be applied.

■ "For a private individual to initiate an action under the Consumer Protection Act, 'the conduct complained of must: (1) be unfair or deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest.'" *McRae v. Bolstad,* 101 Wn.2d 161, 165, 676 P.2d 496 (1984).

The element at issue in the present case is whether K. Frol's violation of his fiduciary duty impacts the public interest. Absent a per se violation, the plaintiff must satisfy the test established in *Anhold v. Daniels,* 94 Wn.2d 40, 46, 614 P.2d 184 (1980):

> [T]he presence of public interest is demonstrated when the proof establishes that (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

As discussed previously, Harstad has presented evidence that K. Frol's deception induced him to assume liabilities that he otherwise would not have assumed to consummate the sale with SS Service Corp. This satisfies the first two prongs of the *Anhold* test.

Harstad had no incentive to produce evidence that K. Frol's deceptive acts had the potential for repetition, because at the time of trial K. Frol's violation of RCW 18.85 constituted a per se violation of the Consumer Protection Act. Nevertheless, from the record, we are able to glean sufficient evidence of potential for repetition to avoid summary judgment.

UMC was a closely held family corporation involved in real estate development. It owned at least one condominium project at the time it was attempting to acquire the 1319 Dexter Building. K. Frol had been working as a real estate agent for little more than a year, yet he had marketed several properties for his father, the president of UMC. At his deposition K. Frol could not recall whether any of these properties were connected with UMC. Giving every reasonable inference to the nonmoving party, however, one could conclude that K. Frol's deceptive practices could be used in other real estate transactions involving UMC.

### FRAUD

Harstad contends that K. Frol defrauded him by representing, that in order to close the sale with SS Service Corp., Harstad had to assume the $63,222.07 owed by UMC. K. Frol responds that contrary to CR 9(b), no cause of action for fraud was asserted in Harstad's complaint.

■ The use of the word "fraud" in a complaint is not necessary as long as facts are pleaded sufficient to present the question of fraud. *McInnis & Co. v. Western Tractor & Equip. Co.*, 63 Wn.2d 652, 388 P.2d 562 (1964). K. Frol was apprised of the facts that gave rise to a cause of action in Harstad's complaint.

K. Frol disputes Harstad's claim that K. Frol's representation concerning the assumption of UMC's debts was untrue. An essential element of fraud is that the representation be false. *Sigman v. Stevens–Norton, Inc.*, 70 Wn.2d 915, 425 P.2d 891 (1967). Summary judgment was improper on the issue of fraud, because there is a disputed issue of

material fact. *See Wilson v. Steinbach, supra.* Other elements to support the fraud claim are present. *See Sigman v. Stevens–Norton, Inc., supra.*

### BUSINESS COMPULSION AND CONSPIRACY

■ Harstad argues that the evidence shows both the causes of action of conspiracy and business compulsion against K. Frol.[2] "[A]n actionable civil conspiracy exists if two or more persons combine to accomplish an unlawful purpose or combine to accomplish some purpose not in itself unlawful by unlawful means." *Peterick v. State,* 22 Wn. App. 163, 191, 589 P.2d 250 (1977). Viewed in the light most favorable to Harstad, as we must, there is sufficient evidence to establish a prima facie case of conspiracy and business duress.

K. Frol was involved with UMC's condominium project, and held a 20 percent interest in UMC. UMC wrongfully refused to close its real estate purchase agreement on October 22, 1980, placing Harstad in an untenable economic position. Both K. Frol and his father represented that Harstad had to assume UMC's $63,222.07 debt in order to close the sale with SS Service Corp. From these facts one could infer concerted action.

■ Any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without the other's volition constitutes duress. *Pleuss v. Seattle,* 8 Wn. App. 133, 504 P.2d 1191 (1972). The actions of K. Frol and his father may have forced Harstad to acquiesce in the sale with SS Service Corp. Because reasonable persons could reach different conclusions based on the evidence presented, summary judgment was improper. *Wilson v. Steinbach, supra.*

---

[2]K. Frol contends that these claims were not argued in Harstad's memorandum in opposition to summary judgment. Contrary to K. Frol's assertion, Harstad's memorandum contained accusations of multiple sources of liability against K. Frol, including "acting in concert with his father to coerce and apply duress to Plaintiff Harstad."

The judgment is reversed and this cause is remanded for further action.

RINGOLD and WEBSTER, JJ., concur.