[No. 17861-0-I.   Division One.   May 26, 1987.]

*In the Matter of the Estate of*
ROBERT P. McKIDDY.

SUSAN L. RUDOLPH, *Appellant,* v. FLORENCE McKIDDY,
*Respondent.*

*William A. Gould, Perkins, Coie, Stone, Olsen & Williams,* and *Joseph A. Moschetto,* for appellant.

*Terrence L. Burns, Burns & Ells,* and *Wayne R. Parker,* for respondent.

DORE, J.*—RCW 11.12.050 provides that a will executed prior to marriage is deemed revoked as to the surviving spouse unless the spouse is provided for or mentioned in the will or unless provision has been made for the surviving spouse by marriage settlement. We hold that a void prenuptial agreement cannot constitute a "marriage settlement" for the purpose of rebutting the presumption of revocation of a will under RCW 11.12.050. We affirm.

## FACTS

Decedent Robert McKiddy and respondent Florence McKiddy (then Florence Fairchild) became engaged after a 2-week acquaintance. Robert, then 61 years old, was a businessman and Florence, then 59 years old, had clerical experience and a high school education. Both had adult children by prior marriages. Soon after the engagement, Florence began working as office manager of Robert's surveying business.

On December 11, 1984, Robert, a domineering man, took Florence to his lawyer's office to discuss a prenuptial agreement. The attorney sent them a draft agreement shortly thereafter. Robert and Florence had the draft modified to give them each the full benefit of the other's social security and to give Florence the accounts receivable of the surveying business if she survived Robert. On December 20, 1984, 1 day before their wedding, Robert and Florence met with the attorney and signed the prenuptial agreement. The attorney advised them that it was unnecessary for Florence to have independent counsel.

The prenuptial agreement does not specifically list the items of property owned by Robert, and Florence had no way of knowing the amount, character or value of his property prior to executing the agreement. The agreement basically defines Robert's and Florence's assets as separate property and waives all marital rights in each other's estate,

---

*This appeal was heard by a Supreme Court Justice, a retired Supreme Court Justice, and a Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

including an award in lieu of homestead. Under the agreement, the increases in the separate property, including Robert's business except for the accounts receivable, were to remain separate to the same extent as if the marriage had never been consummated.

Robert died 4 months after the marriage with Florence, leaving an estate worth over $1 million. Robert's will, made several years earlier, bequeathed his estate to his children and his former wife. He had discussed making a new will providing for Florence, but had failed to do so.

Susan Rudolph, one of Robert's children and the personal representative of the separate estate, brought this proceeding under RCW 11.96.070. She sought a declaration that the prenuptial agreement was valid and binding, and constituted a marriage settlement for the purposes of RCW 11.12.050. Florence McKiddy counterclaimed for a declaration that the agreement was void at its inception, and therefore the will was revoked as to her. The court found in favor of Florence, holding the prenuptial agreement void and thus not a marriage settlement for the purposes of RCW 11.12.050; the court then awarded Florence her intestate share of her husband's estate.

### Effect of a Void Marriage Settlement on a Will

The Washington Supreme Court in *Friedlander v. Friedlander,* 80 Wn.2d 293, 494 P.2d 208 (1972) set forth standards for determining the validity of a prenuptial agreement. The court noted that an engagement to marry creates a confidential relationship, and parties to a prenuptial agreement do not deal with each other at arm's length; they therefore must exercise good faith, candor and sincerity in all matters bearing upon the proposed agreement. *Friedlander,* at 301.

> Where a prenuptial contract makes provision for a wife that is disproportionate to the means of the intended husband, it casts a burden upon the intended husband, and those claiming under him, to prove that she had full

knowledge of all the facts and circumstances that materially affected the contract.

(Citations omitted.) *Friedlander,* at 301. The court further stated:

[The intended wife] must at least have a full and fair disclosure of all material facts relating to the amount, character and value of the property involved so that she will not be prejudiced by the lack of information, but can intelligently determine whether she desires to enter the prenuptial contract. . . .

Further, the prospective spouse must sign the agreement freely and voluntarily on *independent advice* with full knowledge of her rights.

(Citations omitted.) *Friedlander,* at 302–03.

The trial court found that the prenuptial agreement fails to meet the *Friedlander* requirements for a number of reasons. Considering that Robert and Florence could not have known that their marriage would end by death after only 4 months, the agreement waiving all rights in the estate, including an award in lieu of homestead, was disproportionate to Robert's means. Robert had led Florence to believe he had less property than he did. Florence was not informed of the amount, character and value of his property. Florence had no independent advice of counsel, and the attorney that drafted the agreement represented Robert.

Rudolph does not now contend that the prenuptial agreement is valid and enforceable. She instead argues that even if the agreement is void as a prenuptial agreement under the *Friedlander* standards, it should nevertheless be considered a "marriage settlement" for purposes of RCW 11.12.050. RCW 11.12.050 provides:

If, after making any will, the testator shall marry and the spouse shall be living at the time of the death of the testator, such will shall be deemed revoked as to such spouse, unless provision shall have been made for such survivor by marriage settlement, or unless such survivor be provided for in the will or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of

revocation shall be received. A divorce, subsequent to the making of a will, shall revoke the will as to the divorced spouse.

A valid prenuptial agreement can be a marriage settlement for the purposes of RCW 11.12.050. *In re Estate of Nelson,* 85 Wn.2d 602, 612–13, 537 P.2d 765 (1975).

The Washington Supreme Court in *In re Estate of Nelson* considered the effect of a marriage settlement agreement that had been challenged as void on the presumption of revocation of RCW 11.12.050. The *Nelson* court implicitly accepted the position that only valid marriage settlement agreements are relevant to the statute. The court noted that the trial court had found a property settlement "valid and binding" and therefore satisfied RCW 11.12.050. *Nelson,* at 608. The court first considered and rejected various attacks on the validity of the agreement and then determined that a post–nuptial agreement can also constitute a "marriage settlement" for the purposes of RCW 11.12.050. *Nelson,* at 609–13. Thus, the *Nelson* opinion is premised on the necessity of first determining whether a marriage settlement is valid and binding before it is used to rebut the presumption of revocation of a will under RCW 11.12.050.

Rudolph argues that the well established purpose of RCW 11.12.050 is to prevent the unintentional disinheritance of a new spouse. *E.g., In re Estate of Nelson,* at 612. The subject prenuptial agreement, although void, evidences Robert's intent that Florence receive no more than she would have had there been no marriage. RCW 11.12.230 requires courts to have due regard for the "true intent and meaning of the testator, in all matters brought before them." *See also In re Estate of Bergau,* 103 Wn.2d 431, 435, 693 P.2d 703 (1985). Rudolph further argues that the revocation of the will as to Florence is "punitive" and denies Robert his right to devise his property as he chose.

The flaw in Rudolph's arguments is that RCW 11.12.050 does not provide that the presumption of revocation of a will in favor of a new spouse may be rebutted by *any* evi-

dence showing an intent to disinherit a new spouse. To the contrary, the statute provides that, "unless provision shall have been made . . . by marriage settlement . . . [or the spouse is provided for or mentioned in the will] *no other evidence to rebut the presumption of revocation shall be received.*" (Italics ours.) RCW 11.12.050. Under the express language of the statute, the only relevant inquiry is whether provision had been made for Florence in a marriage settlement. "The statute clearly provides that the existence and terms of a marriage settlement is the only evidence which the court can consider to rebut the presumption of revocation of the will." *In re Estate of Geer,* 29 Wn. App. 822, 827, 629 P.2d 458 (1981). Robert did not exercise his legal right to draft a will after his marriage to Florence. Therefore, even with the most compelling evidence of a contrary intention, in the absence of a valid marriage settlement, the will is revoked as to Florence.

## New Issues on Appeal

On appeal Rudolph raises various issues that were not raised before the trial court. RAP 2.5(a) provides in part: "The appellate court may refuse to review any claim of error which was not raised in the trial court." In order to preserve error for consideration on appeal, the general rule is that the alleged error must be called to the trial court's attention at a time that will afford the court an opportunity to correct it. *State v. Wicke,* 91 Wn.2d 638, 642, 591 P.2d 452 (1979). The Supreme Court stated in *Wicke:*

> Under most circumstances, we are simply unwilling to permit a defendant to go to trial before a trier of fact acceptable to him, speculate on the outcome and after receiving an adverse result, claim error for the first time on appeal which, assuming it exists, could have been cured or otherwise ameliorated by the trial court.

*Wicke,* at 642–43. We hereby exercise our discretion to decline to discuss Rudolph's new arguments that the prenuptial agreement was made with testamentary intent and that the trial court should have given partial validity to the agreement. However, because Rudolph's argument based on

equitable estoppel is arguably related to issues raised before the trial court, we will discuss that issue.

## EQUITABLE ESTOPPEL

Rudolph argues that Florence's execution of the prenuptial agreement induced Robert not to make a new will disinheriting her, and she should therefore be equitably estopped from denying the validity of his will.

Three elements must be established before an equitable estoppel may arise: (1) an admission, statement, or act inconsistent with the claim afterward asserted; (2) action by the other party on the faith of such admission, statement or act; (3) injury to such other party resulting from permitting the first party to contradict or repudiate such admission, statement or act. *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 81, 530 P.2d 298 (1975). Rudolph relies on *Hudnall v. Ham,* 183 Ill. 486, 56 N.E. 172 (1899), in which the court held that a party to a prenuptial agreement was estopped from challenging the will when she was aware that the purpose of the agreement was to ensure that decedent's stepchildren would inherit his property. *Hudnall* is clearly distinguishable because the *Hudnall* court found that agreement valid and fair, whereas here the agreement is not enforceable under Washington law.

The facts of the instant case do not indicate the doctrine of equitable estoppel is applicable. Here there is no evidence that Robert relied on the validity of the prenuptial agreement in deciding not to make a new will; to the contrary, it appears he intended to make a new will providing for Florence despite the prenuptial agreement. As there is no evidence of what provision Robert would have made for his wife under a new will, there is no way to determine any injury to his estate.

Moreover, a party seeking to invoke equitable estoppel must be free from fault. *E.g., Harstad v. Frol,* 41 Wn. App. 294, 299, 704 P.2d 638 (1985). The trial court's findings that Robert had Florence sign the agreement without informing her of the extent of his property, combined with

his false assertions that he was in a bad financial situation, militate against allowing his personal representative to assert equitable estoppel based on the prenuptial agreement. The Missouri Supreme Court has also denied the application of equitable estoppel in a case involving an invalid prenuptial agreement. *Mathis v. Crane,* 360 Mo. 631, 230 S.W.2d 707 (1950). In *Mathis,* the decedent husband's estate argued that the surviving wife had accepted benefits under a prenuptial agreement and was therefore estopped from attacking its validity. The court rejected this argument, as the surviving wife had signed the agreement without full knowledge of the value of the decedent's property. *Mathis,* at 643. Similarly, here, Robert's failure to inform Florence of the extent of his property defeats Rudolph's equitable estoppel argument.

CONCLUSION

In determining whether Robert McKiddy's will is revoked as to Florence McKiddy, we are statutorily constrained to consider only whether he provided for her in a valid marriage settlement. This he did not do. Furthermore, the facts of this case fail to indicate that Florence should be equitably estopped from claiming her intestate share. We affirm the trial court.

WETHERALL and WILLIAMS, JJ. Pro Tem., concur.